VALENTINE JONES *et al.* v. SIMPSON HOLLISTER.

1. VENDOR AND BUYER—*Contract*—*When Title Passes.*  A written bond or contract for a deed of land, putting the purchaser thereof in immediate possession, and containing no provision for the forfeiture of the bond or contract if the purchaser fails to pay the installments of purchase money due thereon, passes the entire equitable estate to the purchaser.  The legal title is merely held by the vendor as security for the payment of the balance of the purchase money.

2. EJECTMENT, *Title to Support.*  Where possession is taken under such a bond for a deed, the purchaser has such an equitable title to the real estate as is sufficient to sustain an action to recover possession thereof against a party subsequently obtaining, without right, wrongful possession.

3. BOND FOR DEED — *Tax Deed—Better Title*.  A purchaser holding
   under a bond or contract for a deed of land, where he has paid
   part of the purchase money, and has taken immediate possession
   thereof, has a better title thereto than a party who has taken, subse-
   quently, possession under a void tax deed, although the original
   vendor of the land has made no effort to collect the money due upon
   the notes given for the purchase money and the statute of limita-
   tions has run against them.

*Error from Douglas District Court.*

ON the 28th of March, 1888, *Simpson Hollister*, claiming
to be the actual owner of the south half of the northwest quar-
ter of section 19, township 12, range 20, in Douglas county,
commenced his action against *Valentine Jones* and *J. P. Usher*,
to recover the possession of the same.   The defendants filed
an answer, denying that Hollister was the owner of the prem-
ises.   On the 6th of May, 1889, the death of J. P. Usher
was suggested to the court below, and the action was revived
against his heirs.   Margaret A. Usher, his widow, filed an
answer, alleging that she was the owner of the right, title and
interest which J. P. Usher had at the time of his death.
She further made a general denial of the allegations of the
petition, and also alleged that, whatever rights or interest the
plaintiff or his vendor may have had, they were barred by
the statute of limitations long before this action was com-
menced.   Before the commencement of the trial, T. A. Hurd
appeared, and stated that, as trustee of the Union Pacific
Railway Company, he held the legal title to the land, and
asked leave to be made a party defendant.   The court denied
his request.   Trial was had before the court at the May term
for 1889, a jury being waived.   After hearing all the evi-
dence and the arguments in the case, the court made and filed
the following conclusions of fact:

"The lands described in the petition are a part of about
254,000 acres of land, commonly called the Delaware trust
lands, situated in Leavenworth, Douglas, Jefferson and Wyan-
dotte counties.   The Leavenworth, Pawnee & Western Rail-
road Company, a corporation organized under the laws of
Kansas territory, became entitled to said lands on February

23, 1863, by treaties between the United States and the Delaware Indians. The name of said corporation was afterward changed to that of Union Pacific Railway Company, Eastern Division, to which company said lands were duly paténted by the United States on June 5, 1868. The name of the said Union Pacific Railway Company, Eastern Division, was changed to the Kansas Pacific Railway Company April 6, 1869. The said Kansas Pacific Railway Company was afterward consolidated with other .companies to form the present Pacific Railway Company, and said last-named corporation is the legal successor of all the other companies above named.

"On February 23, 1863, the Leavenworth, Pawnee & Western Railroad Company, by its president and secretary, under its corporate seal, executed and delivered to E. H. Van Deusen and B. F. Hopper its written contract, whereby it undertook and agreed to convey to them the lands described in the petition for the sum of $736, $245.33 being paid in cash and the balance secured by the four promissory notes of said Van Deusen and Hopper, due respectively in one, two, three and four years thereafter, with 6 per cent. interest — the conveyance to be made when said notes were paid according to their terms. Said Van Deusen and Hopper took possession of said lands a few days before the execution of said contract, having advanced said cash payment, and were awaiting the signing of the contract by the proper officers of the railroad company. They erected a house and sawmill thereon at once and occupied the same. They also fenced the land and built several shanties thereon for workmen, and had, from the date of their said occupancy, full and exclusive possession thereof, under said agreement of purchase. On the 17th day of August, 1863, said Van Deusen duly assigned in writing all his interest in said contract and land to said Hopper, who continued in such possession until April 26, 1870, when he conveyed said land by quitclaim deed and delivered possession thereof to Samuel K. Huson. Said deed recites as part consideration that the said Huson assumed payment of said four purchase-money notes to the railroad company, above referred to, amounting to $701.88. Said Huson immediately took possession under said deed by tenant, and held the same until his death, January 2, 1875. His administratrix continued in such possession and rented said lands as a part of the estate. She executed a written lease to one White in 1875, who continued thereunder until and including 1879. After that year, John

P. Devereux, as trustee for said railroad company, claimed the rent and possession, as did also the Huson estate; and White paid rent to Devereux for the years 1880 and 1881. He surrendered his possession to one Albert Moore, as a subtenant, who remained in possession until May, 1884, when he left the place, and it was then leased by J. P. Usher, then claiming title thereto, and who had obtained peaceable possession thereof, to Sam. Lee, who remained in possession as the tenant of said Usher until March, 1886, when it was leased by said Usher to Valentine Jones, defendant, who still holds such possession under said lease. Said Usher's possession was not disturbed until this suit was brought. In the year 1879, the north one-tenth of said lot No. 4 was assessed for taxation, and, said taxes being delinquent, at the tax sales of 1880 the whole of said lot No. 4 was sold for such taxes to J. L. Briggs, and his certificate duly assigned to said J. P. Usher, who paid the taxes of 1881 thereon, and on the 21st day of July, 1884, the whole of said lot No. 4 was conveyed by tax deed to said J. P. Usher, and said deed was duly recorded January 7, 1886.

"In the year 1881, the nine-tenths of said lot No. 4 was assessed for taxation, and, said taxes being delinquent, at the tax sales of 1882 the nine-tenths of said lot (not specifying what nine-tenths) was sold for such delinquent taxes to J. L. Briggs, who assigned his certificate to J. P. Usher, and on the 7th day of September, 1885, the said nine-tenths (not specifying what nine-tenths) of said lot was conveyed to J. P. Usher, and said deed placed upon the proper record in the register's office, March 25, 1887. Both said tax deeds are void upon their face and convey no title, from the year 1879 to the year 1888, inclusive. Taxes have been paid on said property, and a schedule thereof shows a description by which said lot was assessed, the amount and dates of payments, and by whom made. The widow and heirs of said Samuel K. Huson never surrendered possession of said lands, and said Devereux, as trustee, never took possession except by receiving certain rents, as hereinbefore stated, from the tenant of said Huson estate. The said Usher claimed said premises in fee simple, under said tax sales, ever since about the 1st of March, 1884, and his widow still claims the same in fee simple. John P. Usher died intestate, April 13, 1889, leaving his sole heirs, his widow, Margaret A. Usher, and three sons of full age, who have, since his death, conveyed all their right, title and interest in said property to said Margaret A. Usher,

who now owns all the right and title which J. P. Usher had therein. .

"On the 18th day of December, 1866, the Union Pacific Railway Company, by its deed of that date, duly executed, constituted and appointed said J. P. Devereux and H. J. Jewitt, trustees, its attorneys in fact, to take, hold and exercise full, exclusive and absolute control of all said Delaware trust lands (including the lands in suit and the notes of said company or its corporate predecessors), and to do and perform for said railroad company, in reference to said lands and notes, every act or thing that said company might or could do, with full power to make such instruments of conveyance or other assurance, bonds or writing that the said trustees might require.

"The said J. P. Devereux died in 1881, and on March 19, 1883, T. A. Hurd was duly appointed and constituted trustee in his place, with all the power that said Devereux before that time had; and he has since acted and still acts as such trustee. And thereupon, on the 19th of March, 1883, the said Union Pacific Railway Company conveyed to him in trust all the unsold portion of said Delaware trust land, not including the lands in controversy, and on the 6th day of May, 1889, said company conveyed in trust to said Hurd the lands in suit, and some other lands. On the 10th day of March, 1887, the heirs at law of said Samuel K. Huson, deceased, conveyed said land by quitclaim deed to Simpson Hollister, plaintiff, who now owns all the right, title and interest of said heirs therein. The said notes given by Van Deusen and Hopper have not been paid, but are long since barred by the statute of limitation. J. P. Usher, while in possession, and claiming title under his tax deeds, made lasting and valuable improvements on said property."

And thereon the court made and filed the following conclusions of law:

"1. That said plaintiff should have and recover possession of the lands described in the petition, and costs.

"2. Before being let into possession, said plaintiff is adjudged to pay said defendant Margaret A. Usher the sum of $254.80, being the taxes paid by said J. P. Usher, and interest thereon as allowed by law in such cases.

"3. The said tax deeds hereinbefore described are thereupon canceled and held for naught."

The defendants excepted, and bring the case here.

*N. H. Loomis,* for plaintiffs in error:

The possession of land, payment of taxes and the erection of lasting and valuable improvements confer title. *Redden v. Tefft,* 48 Kas. 302–306. It is elementary law that a plaintiff in ejectment is bound to recover upon the strength of his own title, and not upon the weakness of his adversary's title. *O'Brien v. Bugbee,* 46 Kas. 1.

There can be no doubt but that a court of equity would refuse to decree specific performance in favor of Hollister upon the contract in question, because of *laches,* and the staleness of his claim. The contract was entered into in 1863. The heirs of Samuel K. Huson, under whom Hollister claims, have not been in possession of the land since 1879. They allowed Judge Devereux to take possession of the land without objection; no suit to compel a specific performance of the contract was ever brought until 1887, and that case was afterward dismissed. The law in reference to *laches,* in cases of this kind, is laid down in the case of *Fowler v. Marshall,* 29 Kas. 665.

Neither could Hollister compel a specific performance of the contract until after he had paid, or tendered, the purchase price, in accordance with the terms of the contract. *Sanford v. Bartholomew,* 33 Kas. 38; *Iles v. Elledge,* 18 id. 296. See, also, *Conaway v. Gore,* 21 Kas. 725; 1 Pom. Eq. Jur., pp. 419–428; *Elder v. Bank of Ottawa,* 12 Kas. 238; *Stout v. Hyatt,* 13 id. 233–241.

The court below erred in finding that the widow and heirs of Samuel K. Huson never surrendered possession of the land in controversy, and in refusing to allow Judge Hurd to be made a party defendant, and thus have the entire question as to the validity of the title to this land settled in one suit.

*Riggs & Nevison,* and *D. S. Alford,* for defendant in error:

An examination of *Redden v. Tefft,* 48 Kas. 302–306, discloses the fact that the parties claiming possession under the foregoing equities had the prior possession of the property in

controversy in that suit, and that contestants therein unlawfully took possession of the property thereafter under a forged deed from third parties (the real owners), and were mere naked trespassers upon the land under such forged title.

Plaintiffs in error contend that "It is elementary law that a plaintiff in ejectment is bound to recover upon the strength of his own title, and not upon the weakness of his adversary's title." The learned counsel but partially states the law in its application to this case. A complete statement of it will be found in *Duffey v. Rafferty*, 15 Kas. 1.

The contention of plaintiffs in error, that the title of Hollister is based upon a contract so stale that no court of equity would enforce it, is not well taken. The purchasers of this property paid one-third of the consideration of the title bond in cash, took immediate possession, "erected a house and sawmill thereon at once, and occupied the same. They also fenced the land and built several shanties thereon for workmen, and had from the date of their said occupancy full and exclusive possession thereof under said agreement of purchase." There is certainly no *laches* shown by the defendant in error.

The claim of counsel, that Hollister could not compel a specific performance of the contract with the railroad company until after he had paid or tendered the purchase price, in accordance with the terms of the contract, is doubtless correct; but this, by implication, admits that Hollister is entitled to make this payment, if any amount be unpaid, and demand a deed at any time. But this is a contention solely between the trustees of the railroad company and Hollister, in which plaintiffs in error are not interested. A title bond, so far as the maker is concerned, is but a security for the unpaid portion of the consideration, and is to be treated as a mortgage in its enforcement. *Courtney v. Woodworth*, 9 Kas. 443; *Jones v. Lapham*, 15 id. 544, 545.

A bond for a deed of land transfers the title, in equity, to the purchaser, the obligor holding the legal title only as security. *Burkhart v. Howard*, 12 Pac. Rep. (Ore.) 79.

The purchaser under an executory contract for the sale of land is the equitable owner. *Courtney v. Woodworth,* 9 Kas. 451; *Alpers v. Knight,* 8 Pac. Rep. (Cal.) 446; *Taylor v. Holmes,* 14 Fed. Rep. 498; *Martin v. Carver,* 1 S. W. Rep. (Ky.) 199; *Bartle v. Curtis,* 26 N. W. Rep. (Iowa) 73; *Gilbert v. Sleeper,* 12 Pac. Rep. (Cal.) 172; *Laughlin v. Braley,* 25 Kas. 147.

The vendor holds the legal title as trustee for the vendee. *Taylor v. Cent. Pac. Rly. Co.,* 8 Pac. Rep. (Cal.) 436; *Taylor v. Holmes,* 14 Fed. Rep. 498. See, also, *Thornburgh v. Cole,* 27 Kas. 490.

The opinion of the court was delivered by

HORTON, C. J.: The contract under which Hollister claims the land in controversy was made by the Leavenworth, Pawnee & Western Railroad Company to E. H. Van Deusen and B. F. Hopper on February 23, 1863. At the date of the contract, $245.33 was paid in cash, and four notes, each for $122.62, due in one, two, three and four years, respectively, were given for the balance of the purchase price. The contract contained no terms of forfeiture, and, excepting the reservation for the railroad company of a right-of-way 80 feet in width over the land, and the right to take gravel, earth and stone for the construction of its road, the provisions were merely to the effect that the company would execute to Van Deusen and Hopper, their heirs and assigns, a general warranty deed for the land sold, upon the payment of the notes and interest specified therein. Van Deusen and Hopper immediately went into possession of the land. Van Deusen afterward assigned his interest in the contract to Hopper, and in 1870 Hopper quitclaimed his interest to Samuel K. Huson. In this conveyance Huson assumed the payment of the notes to the railroad company, none of which have been paid. Huson immediately took possession of the land by tenant, and continued in possession of the land until his death. He died January 2, 1875, leaving a widow and heirs, who continued, so far as they were able to do, to

collect rent from the tenants occupying the land. Huson never paid the notes in question, or any part of them, and they still remained unpaid. In 1879 the heirs of Huson, deceased, ceased paying taxes upon the land. They did not pay the taxes for that year or any subsequent year. The land was afterward sold for taxes, and deeded to J. P. Usher. Usher took possession in the spring of 1884, and continued in possession until his death. Since his death, Margaret A. Usher, his widow, has continued in possession of the land, and is now in possession of it, through Valentine Jones, her tenant. Usher placed lasting and valuable improvements upon the land, after he took possession of it. On March 10, 1887, the heirs of Huson quitclaimed their interest in the land to Simpson Hollister. The trial court held that Usher's tax deeds were void, and gave judgment in favor of Hollister, the plaintiff below, but preserved for the defendants all their rights for taxes and improvements under the statutes.

There is nothing in the evidence or findings showing or tending to show that the Leavenworth, Pawnee & Western Railroad Company or any of its successors ever forfeited, by judgment or otherwise, the contract for the sale of the land of the 23d of February, 1863. Under that contract, Van Deusen and Hopper and their subsequent grantees or assigns had an equitable title to the land. Under the contract, possession was taken by the purchasers, and such purchasers and their grantees or assigns continued in possession from 1859 until the spring of 1884, when Usher took possession under his tax deeds. There is a special finding of the trial court that the widow and heirs of Samuel K. Huson, who was in possession at his death, on January 2, 1875, never surrendered possession of the land, although Devereux, who represented the interest of the Union Pacific Railway Company, Eastern Division, received certain rents from the tenant of the Huson estate.

The contention is that the finding of the trial court, that Mrs. Huson never surrendered possession, is not sustained by the evidence. Wm. P. White was the last tenant from whom

Mrs. Huson collected rent. He moved upon the land in 1874 as a tenant of Huson, and left the land in 1881. After Huson died, he paid the rent to Mrs. Huson for two years, and then paid rent to Devereux. But it does not appear that Mrs. Huson consented that White should pay any rent to Devereux, or anyone else. The record shows that the administratrix of the Huson estate brought suit in 1879 against White and recovered judgment of $175 for rent of the land. We think that there was enough evidence offered upon the trial to support all the findings of fact.

It is next contended that Hollister ought not to recover, unless he has a title to the land against the Leavenworth, Pawnee & Western Railroad Company, or the Union Pacific Railway Company, its successor, which would be recognized and protected in a court of equity. But the Leavenworth, Pawnee & Western Railroad Company, the original owner of the land, or its successor, is not here complaining. Mrs. Usher is not the representative in any way in this action of the Leavenworth, Pawnee & Western Railroad Company or the Union Pacific Railway Company, or any other person or party claiming title or interest from any railroad company. So far as this case is concerned, Usher, when living, and his widow, since his death, are strangers to all the railroad companies. At the trial, T. A. Hurd appeared and asked permission to intervene and file an answer as trustee of the Union Pacific Railway Company, but he is not a party to the proceedings in error, and he makes no complaint in this court of any ruling of the trial court. Therefore, in this action, we cannot, if we would, protect the rights, if any, of the Leavenworth, Pawnee & Western Railroad Company, or the Kansas Pacific Railway Company, its successor, or the rights, if any, of T. A. Hurd, the trustee.

If the railroad companies have permitted the persons holding under the written contract in the purchase of this land to remain in possession thereof without attempting to collect the balance of the purchase money until it has been barred by the statute of limitations, that is a matter wholly between

the companies and the parties holding under the written contract of purchase. This is no concern of Mrs. Usher, or her tenant.

Of course, a plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of that of the defendant. (*Mitchell v. Lines,* 36 Kas. 378.) But when the Leavenworth, Pawnee & Western Railroad Company sold the land in dispute to Van Deusen and Hopper, and executed to them, as purchasers, a title bond or contract therefor, and received a part of the purchase money, taking several promissory notes for the deferred installments of the purchase money, and then put the purchasers in possession, (time not being of the essence of the bond or contract,) the entire equitable estate of the land passed to Van Deusen and Hopper, and their vendees or assignees. Everything passed to them except the mere legal title, and that was held by the railroad company merely as a security for the payment of the notes. (*Courtney v. Woodworth,* 9 Kas. 443.) Under the code, an equitable title to real estate is sufficient to sustain an action to recover possession. (*Railway Co. v. McBratney,* 12 Kas. 9.) In this state, in ejectment, the party having the better title may always recover, whatever that title may be, legal or equitable. If the title of a plaintiff is better than that of a defendant, the plaintiff may recover, however weak his title may be. (*O'Brien v. Wetherell,* 14 Kas. 616; *Duffey v. Rafferty,* 15 id. 9; *Mooney v. Olsen,* 21 id. 691.)

Upon the findings of fact, the plaintiff below was entitled to recover. We perceive no error in the record.

The judgment of the district court must be affirmed.

All the Justices concurring.