No. 39,682

Naurice Goodman and Freda Goodman, husband and wife, *Appellees*, v. Elliot Smith in his capacity as Sheriff of Morris County, Kansas, and LeRoy Francis, d/b/a the Wilsey Grain Company, *Appellants*.

(281 P. 2d 1094)

Opinion filed April 9, 1955.

*Marlin Brown*, of Council Grove, argued the cause, and *Constance L. Brown*, and *Don E. Brown*, both of Council Grove, were with him on the briefs for the appellants.

*Harry M. Tompkins*, of Council Grove, argued the cause, and *Owen S. Samuel*, of Emporia, and *Walter E. Hembrow*, of Council Grove, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This appeal was taken from a decree granting an injunction whereby a levy and resulting sale by execution were enjoined. The execution was issued out of a case where appellant, LeRoy Francis, doing business as the Wilsey Grain Company, had obtained a money judgment against appellees' predecessors in title. Appellant Elliot Smith was a party to this appeal by reason of the fact that in his capacity as sheriff of Morris county he had served the execution levied on the land in question and was proceeding with plans to sell the land. He was enjoined on the day before the sale of the land by the injunction decree of the district court. Therefore, we will refer herein only to LeRoy Francis, doing business as the Wilsey Grain Company, as appellant.

The stipulated facts were substantially as follows: H. G. Pickett

and his wife, Ethel V. Pickett, owned 160 acres of land and had lived thereon with their children since 1949; on November 25, 1952, they sold 145 acres from the 160 acres to Harry Campbell, leaving approximately ten and one-half acres with the house located thereon, where the Pickett family continued to live until January 31, 1953, when they moved; on the same date Naurice and Freda Goodman and their children moved into the house; the Goodmans still occupy the premises; on January 19, 1953, the Picketts entered into an agreement to sell the property by warranty deed to C. F. Seth for $7,-750.00; on January 19, 1953, Seth had his daughter's name, Freda E. Goodman, inserted as grantee in the warranty deed; also on January 19, 1953, the deed, abstract, and $7,750.00 were placed in escrow, where they remained except for abstract of title examination until sometime in January, 1954; the Wilsey Grain Company on November 28, 1952, had filed an attachment against the proceeds from the sale of the 145 acres and on the same day the Picketts had filed a motion to dismiss the attachment because the premises were occupied by them as a homestead; the Wilsey Grain Company orally dismissed the attachment on May 1, 1953, and obtained a judgment against the Picketts; Seth and his daughter took the abstract to Brown and Brown, attorneys, for examination shortly after January 19, 1953; on February 11, 1953, those attorneys submitted a preliminary title opinion which showed that the property had not been surveyed so that the legal metes and bounds description could be determined, and, along with this objection, other objections were made, as follows:

"1.  Taxes for the year 1952 are shown as NOT paid.

"2.  Case No. 9830 pending in the Morris County District Court, the Wilsey Grain Company vs. H. G. Pickett.

"3.  A mortgage recorded in Volume 67, page 194, granted by H. G. and Ethel V. Pickett to Producers Livestock Credit Corp.

"4.  One-half of the oil, gas and minerals in and under the surface of said land reserved by E. H. and Marie Hammer, husband and wife, for a period of 20 years, from January 25, 1950, or as long thereafter as there may be production.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"8.  It is required that there be a plat placed on this abstract setting out the different described tracts conveyed within this one-fourth section.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"10.  I would like to call attention to the fact the agreement does not except the tract of land now held by the Commodity Credit Corp.

"11.  Subject to the completion of a fence as set out in the last paragraph of the purchase agreement.   .   .   ."

All of the objections set out in their opinion have not been re-iterated here for the reason we do not believe that is necessary.

It was further stipulated that a final opinion was made on August 4, 1953, which stated there was a lien by the Wilsey Grain Company on the judgment against the Picketts; an execution was issued August 18, 1953, out of the Wilsey Grain Company v. Pickett case; the property occupied by the Goodman family was levied upon and advertised for sale on October 2, 1953; this sale was enjoined by the present action which was filed October 1, 1953, against only the sheriff at first, but it was later amended to bring in the Wilsey Grain Company; the warranty deed was placed of record in the office of the register of deeds in January, 1954.

Appellant's answer denied appellees were the legal owners of the property or that it was their homestead and, in substance, stated: There had not been delivery of the warranty deed to appellees and the Picketts owned the premises as tenants in common; the premises were not their homestead and they were not living thereon; appellant had a lien on the premises by reason of his judgment of May 1, 1953; the premises were subject to execution levy and sale to satisfy the judgment; and finally, that appellees had an adequate remedy at law against the Picketts and any right, title, or interest was obtained by appellees with notice and knowledge of appellant's claim and right and, therefore, the injunction should be denied.

Appellees filed a reply setting out a general denial to appellant's answer. The trial court found generally in favor of appellees and against appellant on all issues and granted a permanent injunction enjoining the levy and sale of the ten and one half acres in Morris county. An amended notice of appeal was filed August 21, 1954, appealing from the judgment of the district court.

In its memorandum opinion of June 14, 1954, the trial court found the land was originally occupied by the Picketts as their homestead. After selling 145 acres the Picketts continued to live on the ten and one half remaining acres as a homestead until January 19, 1953, at which time a warranty deed was executed and *delivered* to the escrow holder conveying the property to Freda Goodman. The $7,750.00 full consideration in the deed was deposited with the escrow holder by Seth on January 31, 1953. Picketts moved out and appellees moved into the premises and occupied them as their homestead. The trial court concluded and held:

"1. That injunction is a proper remedy for the plaintiffs to pursue under the facts of this case.

"2. During all of the time that they owned the property, the Picketts were occupying it as a homestead and the lien of the Wilsey Grain Company did not attach thereto.

"3. The sale of the property to the Goodmans on January 19, 1953, and the transfer of possession to them on the 31st day of January, 1953, effectively transferred the equitable title to them, free and clear of any lien in favor of the Wilsey Grain Company.

"4. The execution issued by the Wilsey Grain Company on August 18, 1953, did not in any way attach to this property, and such company has no lien thereon.

"5. Since the property was not the property of the Picketts at the time of the issuance and levy of execution, the levy is void.

"6. Since the levy and proceedings subsequent thereto are void, it follows that a permanent injunction should issue enjoining both defendants from proceeding with the levy and sale."

The first question raised by appellant in this case is whether this is an executory or an executed contract. He cites several authorities, which are good law, but many of the citations are not applicable here. In 12 Am. Jur., Contracts, § 9, p. 507, it is stated:

". . . an executed contract consists in the performance of everything necessary to be done according to the terms of the contract by the party contracting, so as fully to invest the party contracted with dominion over the thing parted with."

Appellees paid by and through Seth the entire purchase price of $7,750.00 set out in the agreement; the deed was made out and executed by the grantors in blank at first, but later in the same day Freda Goodman, one of the appellees, was named as grantee; the appellees with their children moved into and were occupying the premises as their homestead on January 31, 1953, which was in a preceding term of court and over three months before appellant obtained his judgment on the claim he had against the grantors in the deed. At this time the contract had become executed to the extent that there was no title left in the grantors subject to the execution of appellant. (*Miller v. Kemp*, 157 Va. 178, 160 S. E. 203, 84 A. L. R. 980, 987; 17 C. J. S., Contracts, § 7, p. 325-326.) This contract and subsequent actions of the parties conveyed all the equitable title to appellees. (*Jones v. Hollister*, 51 Kan. 310, 32 Pac. 1115; *Gault v. Hurd*, 103 Kan. 51, 172 Pac. 1011; *Coryell v. Hardy*, 144 Kan. 194, 58 P. 2d 1151; *In re Estate of Hulteen*, 170 Kan. 515, 519, 227 P. 2d 112.) The Coryell case sets out a very able determination of a contract wherein there was a small down payment with the balance of

the purchase price to be paid in installments. There the grantee was held to be holder of an equitable title and it was said, in substance, that the intent of the parties controls the method of performance of their contract of purchase and sale. This rule is also well stated in 55 Am. Jur., Vendor and Purchaser, § 355, p. 781, § 356, p. 782-783. (See, also, *Caltrider v. Caples,* 160 Md. 392, 153 A. 445, 87 A. L. R. 1500.) Appellant in this case had no rights until his judgment was obtained and at that time all the purchase price recited in the contract was paid.

Appellant next contends that the grantor still had the legal title, but it is generally held and is followed in Kansas that a judgment and execution against the owner of the bare legal title is not a valid lien on the realty where the equitable title has been previously vested in another. (*Caltrider v. Caples,* supra; *Emery v. Bank,* 97 Kan. 231, 155 Pac. 34; *Federal Trust Co. v. Ireland,* 132 Kan. 615, 296 Pac. 704.) Giving the judgment and execution its most extensive application it would have reached back only to the beginning of the term in which judgment was rendered, and by that time the deed, all the purchase price, and other conditions precedent under the contract had been carried out. Appellant refers to the contract as an executory contract, but in view of the stipulated facts and what has been said, the contract, the terms of which were as follows:

"This contract and agreement made and entered into this 19th day of January, 1953, by and between H. G. Pickett and Ethel V. Pickett, husband and wife, sellers, parties of the first part and C. F. Seth, purchaser, party of the second part, all of Morris County, Kansas, wherein and whereby parties of the first part agree to sell and do ʻsell and party of the second part agrees to purchase and does purchase the Southeast one-fourth of Section Sixteen (16), Township Sixteen (16), Range eight (8), Morris County, Kansas, except that portion thereof previously sold REA and except that portion previously sold Campbells and subject to certain oil, gas and mineral reservations held by E. H. Hammers, it being understood that this particular tract consists of approximately ten acres and is that portion of the Southeast one-fourth of Section Sixteen (16), Township Sixteen (16), Range Eight (8), Morris County, Kansas, where the house is located, provided, however, that the barn and the premises on which it is located is not a part of this transaction.

"It is agreed that the total purchase price for this tract is $7,750.00 and that the entire amount is to be escrowed with the Morris County Savings and Loan Association immediately upon sellers depositing therewith a Warranty Deed conveying the premises to the purchaser or parties designated by him.

"It is agreed further that the escrow agent may and is hereby directed immediately upon the receipt of the escrow money to pay the mortgage in full on the premises to Producers Credit Corporation and other expenses in-

cidental to the transaction such as real estate brokerage, payable to E. W. Roberts, taxes, if any, abstracting, etc.

"Sellers further agree that they will furnish the purchaser and/or the parties designated by him, an abstract showing good and merchantable title; possession to be delivered purchaser on or before February 15, 1953.

"It is further agreed and understood that the insurance now in force on the house upon the premises is to be assigned the new owner or owners without charge or compensation therefore, and that the purchaser is, as of this date, granted an insurable interest in the premises and is authorized to increase the insurance if he so elects.

"Sellers further agree that they will complete the fence on the west side of this particular tract (that is being sold in this transaction); fence to be completed and constructed according to the Campbell transaction.

"This contract to be binding upon the heirs, successors and assigns hereto,"

had, by January 31, 1953, become no contract because its terms had been fully complied with and carried out. This left nothing to which the later judgment and execution of LeRoy Francis could attach so far as the real estate in question was concerned.

Appellant claims the contract provided a condition precedent in regard to the sellers further agreeing that they would furnish an abstract showing good and merchantable title, but this was nothing more than a condition subsequent under the language of the contract.

The other matters raised by appellant need not be discussed here including a motion to expunge certain portions of appellees' brief.

The decree of the lower court enjoining the sale by the sheriff under an execution was not error and it is, therefore, affirmed.