Frances H. GIBLIN, Appellant and Cross-Appellee,

v.

Robert BEELER, Appellee.

Wilma BEELER and Juliette Beeler, Appellees and Cross-Appellants,

v.

Floyd LAMPERT and First National Bank of Beloit, Kansas, a corporation, Cross-Appellees.

Nos. 9517–9519.

United States Court of Appeals Tenth Circuit.

June 20, 1968.

B. L. Pringle, Topeka, Kan. (Terence M. O'Brien, Kansas City, Mo., and John S. Dean, Jr., Topeka, Kan., were with him on the brief), for appellant, Frances H. Giblin and cross-appellees, Floyd Lampert and The First Nat. Bank of Beloit, Kan.

Jerry W. Hannah, Topeka, Kan. (T. D. Relihan, Terry E. Relihan, Smith Center, Kan., Clayton M. Davis, Mark L. Bennett, Sr. and Mark L. Bennett, Jr., Topeka, Kan., were with him on the brief), for appellees and cross-appellants.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and CHRISTENSEN, District Judge.

DAVID T. LEWIS, Circuit Judge.

This is a diversity action arising in the District of Kansas by the complaint of plaintiff Giblin as the holder of five promissory notes each executed by one or more of the defendants Beeler. Plaintiff, principal stockholder in and chairman of the board of the First National Bank of Beloit, Kansas, obtained the notes through the efforts of Lampert, president of the bank and admittedly plaintiff's general agent in the transactions. Each of the notes was negotiable in form, payable to the bank, and in an amount varying between $15,000 and $51,377.96. Plaintiff sought recovery against the defendant makers as follows:

(1) From Robert Beeler on Note 1.

(2) From Robert Beeler and Juliette Beeler, his wife, on Note 2.

(3) From Wilma Beeler, mother of Robert, on Note 3.

(4) From Wilma Beeler on Note 4,

(5) From Robert Beeler and Wilma Beeler on Note 5.

After the principal complaint was filed, defendant Wilma Beeler was given leave to file a third-party complaint in which she sought indemnity from the bank and its president and agent, Lampert, for any amount which she was found owing the plaintiff Giblin should the latter be granted judgment.[1]

Trial of the issues was to a jury. The court directed a verdict in favor of plaintiff and against Robert Beeler on each of the notes to which he was a signatory and no appeal is taken from that aspect of the case. The remaining issues were submitted to the jury through special interrogatories and general verdict as provided for by Rule 49(b), Fed.R.Civ.P. The jury answered the interrogatories and returned general verdicts in favor of Juliette Beeler on Note 2, in favor of Wilma Beeler on Notes 3 and 4, and in

---

1. As will later appear, no relief should be granted on the third-party complaint.

favor of plaintiff and against Wilma Beeler on Note 5.

After entry of judgment on the jury verdicts, the plaintiff moved for judgment notwithstanding the verdict against Juliette Beeler on Note 2 and against Wilma Beeler on Notes 3 and 4, and defendant Wilma Beeler moved for judgment on the special interrogatories, the answers to which were alleged to be inconsistent with the general verdict on Note 5. The trial court granted each of these motions and entered judgment accordingly. Thereafter each party filed a motion for a new trial on each aspect of the judgment which then stood adverse to the respective party. All such motions were overruled and this appeal and the cross appeals inevitably followed.[2]

Each of the subject notes was taken by the bank during the course of a continuing arrangement with Robert Beeler for the financing of a cattle-buying operation. In simple summary, Robert Beeler was purchasing cattle and paying for them with a check drawn upon the bank, covering the check with a sight draft drawn on anticipated or actual purchasers of the cattle from him for which the bank gave him immediate credit pending honor of the draft. Thus, a continuing float of credit was extended to Robert Beeler which collapsed when various sight drafts were dishonored. The bank then called on Robert Beeler to cover his overdrafts and, in separate transactions, the subject notes were executed by the parties and were applied by the bank for that purpose. The evidence

pertaining to the execution and delivery of each instrument must be separately considered.

On April 26, 1963, Robert Beeler had dishonored sight drafts at the bank in the sum of $51,377.96 which he was called upon to cover by the bank president Lampert. Beeler did so by delivering to the bank his note of equal amount, Note 2, and purportedly secured by a chattel mortgage. Juliette Beeler had signed both note and mortgage in blank and the instruments were thereafter filled out and completed at the bank by Lampert and Robert Beeler.

Juliette Beeler testified that some weeks prior to April 26 Lampert had been informed that she and her husband contemplated summer pasturing cattle upon their farm and that Lampert had stated that special arrangements for the financing of such cattle would have to be made. She further testified that she signed the note and mortgage in blank, at her home, gave them to her husband to deliver to Lampert, and that her "husband had the authority to have Mr. Lampert to make arrangements to loan us enough money to put some cattle on our pasture." In May she called Lampert and requested the return of the note and mortgage and then found out that the instruments had been used for another purpose. No livestock had ever been placed on the farm.

In submitting the issues of Note 2 to the jury the trial court correctly instructed on the liability of one who executes a negotiable instrument in blank.[3] The jury found as a fact that plaintiff

---

2. The plaintiff also appeals from the trial court's rulings concerning the defendant Wilma Beeler's ownership of certain real estate and homestead which was the subject of a praecipes for execution to satisfy judgment filed by plaintiff. For clarity's sake discussion of this is deferred until later in the opinion.

3. K.S.A. 52–214 provides:
"Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein; and a signature on a

blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, however, that any such instrument, when completed, may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands,

was not a holder in due course and, indeed it is apparent as a matter of law that plaintiff's rights could rise no higher than the rights of the bank or the knowledge of her general agent, Lampert.

As we have indicated, the jury returned a verdict for Juliette Beeler and the trial court set it aside and entered judgment n. o. v. for plaintiff. We hold the court erred in so doing.

 Note 2 is the only note involved in the case that was signed by Juliette Beeler and the only one that was accompanied by a chattel mortgage. Lampert knew that the instruments had been signed in blank for he completed them. He knew that the note was being taken to cover Robert Beeler's overdrafts and for no other purpose. He knew that the chattel mortgage, purporting to mortgage specific cattle on the Beeler farm, was a complete sham in form and substance. Although the jury's verdict is dependent upon the credibility of Juliette Beeler's testimony and the necessary implication that she was financially betrayed by her husband, we believe the total circumstances such as could properly lead reasonable men to believe that she was similarly betrayed by the bank. The evidence must here be viewed in the light most favorable to the party having received a verdict, and so viewed, the jury was justified in finding that Lampert knew, or should have known, that he was taking and using Juliette's note contrary to her intended purpose. In such case the granting of judgment notwithstanding the verdict was improper. Stringer v. Dilger, 10 Cir., 313 F.2d 536.

 As defenses to plaintiff's claims on Notes 3 and 4 Wilma Beeler alleged that these notes were obtained from her by Lampert through breach of a fiduciary relationship to her, that the bank's title to the notes was defective by reason of failure of consideration, fraud, misrepresentation or mutual mistake of fact and that she signed the notes as an accommodation to the payee. The trial court instructed on these issues in general and submitted a number of special interrogatories to the jury including the following:

"4. Had Floyd Lampert, on the 13 day of May, 1963 and prior thereto individually and/or as president of the First National Bank of Beloit, Kansas, acted as a fiduciary or financial advisor to Wilma Beeler on her financial and business affairs? Answer: Yes."

"6. Did Floyd Lampert as an individual and/or as president of the First National Bank of Beloit, Kansas request, instruct and advise Wilma Beeler to sign the two promissory notes dated May 13, 1963 and marked as Exhibits 3 and 4 and referred to in Counts III and IV of plaintiff's complaint? Answer: Yes."

Subsequent to the verdicts of the jury favoring Wilma Beeler on these notes the trial court, after review of the evidence, concluded that he had erred in submitting a factual issue on the question of the existence of a fiduciary relationship between Lampert and Mrs. Beeler and on the other enumerated claimed defenses. Stating that the "evidence is well nigh conclusive" that Mrs. Beeler executed the notes at the request of and for the accommodation of her son, the court held that plaintiff had been entitled to a directed verdict on the issues and entered judgment accordingly and notwithstanding the jury verdict. The factual setting surrounding the execution of Notes 3 and 4 indicates this was a proper disposition in the case.

On March 13, 1963 Lampert called defendant Robert Beeler and advised him that his account was overdrawn some $50,000. The two notes in question were drawn up by Lampert and taken by Robert to his mother Wilma Beeler's home where she signed them and Robert returned them to the bank for deposit in his account. Also on the same day an additional deposit was made sufficient,

and he may enforce it as if it had been filled up strictly in accordance with the

authority given and within a reasonable time."

when added to the notes, to cover the checks which had resulted in the overdraft.

Attendant to the signing of these notes was a phone call to Wilma Beeler from Lampert, but the record is not clear whether it occurred before or after their execution. In response to the question whether she had discussed the notes with her son, Mrs. Beeler gave the following self-contradicting statement:

"I did not, because Mr. Lampert called me and pointed out what I was to do and I was prepared to sign. In fact, I distinctly remember at the time I told him that Bob had just left with the notes and I presume that he took them down to the bank, I don't know."

The trial judge found no credible evidence to support any finding other than that Robert procured his mother's signature to "save his own skin" and that her accommodation was to him and not the bank. We agree. The claim of a fiduciary relationship was conclusionary and supported only by the showing of a few conversations over a period of time relative to her financial matters and no showing of reliance on her part. This was insufficient. If Mrs. Beeler was the object of duress, fraud or misrepresentation the evidence proffered failed to inculpate the bank or its agent. It is true that Mrs. Beeler testified that her subjective intent in signing the notes was to protect her friend Lampert from the embarrassment of a visit from the bank examiners but we agree that the evidence is "well nigh conclusive" that her actions were motivated at this time by her natural desire to help her son. She was generally aware of her son's financial plight and the consequences to him if his checks were dishonored. This court has long held that a trial court must direct a verdict at the close of evidence where evidence is undisputed or where evidence, though conflicting, is so conclusive that the court, in exercise of sound judicial discretion, as here, ought to set aside a verdict in opposition to such evidence. Farr Co. v. Union Pac. R. R. Co., 10 Cir., 106 F.2d 437; Grinnell Co. v. Miller, 3

Cir., 150 F.2d 345; Franks v. Groendyke Transport, 10 Cir., 229 F.2d 731.

Wilma Beeler signed Note 5 on May 16 under circumstances which presented substantial factual questions for the jury's consideration determinative of her liability to plaintiff on this instrument. On this note Mrs. Beeler asserted that it had been altered substantially upward in amount after execution and that she had signed it only because of Lampert's hysterical plea that he would lose his job if she did not help him. The note was signed at the bank in Lampert's presence. The court instructed the jury that if the note had in fact been altered after execution then plaintiff could not recover thereon; and further instructed that if Mrs. Beeler had signed the note on Lampert's insistence for the accommodation of the bank then plaintiff could not recover thereon; on the other hand, the court continued, if Mrs. Beeler signed the note for the accommodation of her son and to help him, then she would be liable even though she received no benefit from doing so. These instructions correctly set forth the applicable law and constituted a proper premise for the jury's consideration. The jury returned a verdict for plaintiff which the trial court set aside and entered judgment for Mrs. Beeler, holding that the jury's answers to special interrogatories compelled such procedure. The court erred in so doing for a general verdict can be subrogated to special answers only when the two are completely irreconcilable. Every reasonable intendment, consistent with the evidence and its fair inferences, must favor the general verdict. Theurer v. Holland Furnace Co., 10 Cir., 124 F.2d 494. The following interrogatories pertinent to the issues on Note 5 were submitted and, as we will indicate, the answers returned are not irreconcilable to the verdict.

"Is plaintiff a holder in due course of the note * * *? Answer: No." This answer is consistent and was dictated by law as well as fact.

"Do you find that there was any material alteration made in the note

marked Exhibit 5 and referred to in Count V of plaintiff's complaint? Answer: "No."

This answer is patently consistent and negated the claimed defense.

"Did defendant, Wilma Beeler rely and act upon any advice or counsel of Floyd Lampert as an individual and/or as president of the First National Bank of Beloit, Kansas in the conduct of her business or financial affairs? Answer: Yes."

"Did Floyd Lampert as an individual and/or as president of the First National Bank of Beloit, Kansas on the 16 day of May, 1963 and/or prior thereto, act as a financial advisor or fiduciary to Wilma Beeler with regard to her financial or business affairs? Answer: Yes."

As we have indicated, the trial court correctly determined that the evidence did not establish a fiduciary relationship. The fact that Lampert had advised Mrs. Beeler upon some earlier financial affairs had no particular probative significance to the special issue presented on Note 5.

"Did Floyd Lampert individually and/or as president of the First National Bank of Beloit, Kansas request, instruct and advise Wilma Beeler to execute the promissory note in the amount of $46,077.14 which is Exhibit 5 and referred to in Count V of plaintiff's complaint? Answer: Yes."

Lampert admittedly requested Mrs. Beeler to sign the note and the jury's answer was thus compelled. The answer, however, does not dictate the conclusion that the request was for the accommodation of the bank and not for the son.

"Was Wilma Beeler deceived on any material item or fact relating to her signing of the note marked Exhibit 5 in Count V of plaintiff's complaint? Answer: Yes."

This interrogatory did not establish who deceived Mrs. Beeler. The evidence is more than sufficient to support an inference that she was deceived by her son.

We conclude that the special answers are not irreconcilable with the verdict and that, in view of the specific and clear instructions pertaining to Mrs. Beeler's claims, the jury returned a verdict with understanding and that such verdict should be sustained.

In an attempt to satisfy the judgments granted by the court and jury on Notes 1 through 5, the plaintiff filed a praecipes for execution against real estate which she alleges was owned by Robert and Wilma Beeler. Defendant Wilma Beeler filed motions to quash the execution on Notes 1, 2 and 5 claiming she owned the property outright and at the same time she filed a notice of claim of homestead.[4] Upon plaintiff's motion a hearing was held and it was determined that Wilma Beeler had a homestead on the property in question and execution thereagainst was quashed pursuant to Kansas law.[5] The court determined the remainder of the property to be owned solely by Wilma Beeler and therefore not subject to exe-

4. K.S.A. 60-2302 provides:
"Whenever any levy shall be made upon the lands or tenements of a householder whose homestead has not been selected and set apart, such householder, his wife, agent or attorney may notify the officer in writing at the time of making such levy, or at any time before the sale, of what he regards as his homestead, with a description thereof, and the remainder alone shall be subject to sale under such levy."

5. K.S.A. 60-2301:
"A homestead to the extent of one hundred sixty (160) acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife."

cution for the debts of Robert and Juliette Beeler on Notes 1, 2 and 5. Goodman v. Smith, 177 Kan. 712, 281 P.2d 1094. The court, however, permitted execution and sale of the remaining land to cover the judgments rendered against Wilma Beeler on Notes 3 and 4.

The subject property was willed one-half to Wilma Beeler and one-half to Robert Beeler by Lester Beeler, the husband of Wilma and father of Robert. On June 21, 1963, which was after the execution of all the notes in question, the property was mortgaged to the John Hancock Life Insurance Company for $120,000 the proceeds going to pay off part of the Beeler indebtedness.

At the hearing a duly executed and notarized deed bearing the date of July 25, 1963 and purporting to convey all the interest of Robert and Juliette Beeler in the subject property to Wilma Beeler was introduced in evidence. The deed, however, had not been recorded until December 26, 1963 which was after the commencement of this suit. The court was urged to find that the transfer was a fraudulent conveyance made for the purpose and with the intent to defraud creditors and principally the plaintiff who was then holder and owner of all the notes which are the subject of this suit.

■■■■ Intrafamily conveyances under the circumstances here present should receive careful scrutiny and be viewed with a wary eye but need not be adjudged fraudulent as a matter of course. See Stephenson v. Wilson, 147 Kan. 261, 76 P.2d 810. The trial court found the consideration growing out of the mortgage transaction to be adequate to support the conveyance and in the absence of any evidence to the contrary found the deed was executed as alleged on July 25, 1963. Such finding was not clearly erroneous.

■■■■ The ruling that Wilma Beeler had a homestead on the subject property is likewise sufficiently supported by the evidence. The fact that she at one time had a homestead is not questioned and therefore makes proper application of the presumption that such homestead continues until a party attempting to defeat it can sustain the burden of proving by "positive and clear" evidence not only a physical absence but an intention not to return. Bellport v. Harder, 196 Kan. 294, 411 P.2d 725.

■■■■ The question raised is very much like and is analogous to the question of one's domicile. The critical element is that of intention and the evidence probative only if it is related thereto. Length of absence is material only as it bears on the question of intent. On the one hand the shortest absence is sufficient to abandon one's homestead or domicile if the requisite animus be present, and, on the other, the longest will not suffice if it be lacking.

■■■■ While it is true in the case at bar that Wilma Beeler had lived away from the homestead for considerable periods of time, her conduct as it related to both the homestead and her other places of residence did not dictate a finding by the trial court of an intention on her part not to return. While absent she lived in an apartment or in a hotel and is clearly not within the language of the Kansas Court in its holding that it would extend the object of the homestead exemption too far to

"* * * assert that a man, or the head of a family, can be the owner of two separate and distinct homesteads at the same time, or that one person may own and occupy one place for a residence 'where he surrounds himself with the ordinary insignia of a home, and where he may enjoy its immunities and privacy,' and at the same time claim as a homestead another place by virtue of its occupation by a tenant and an intention to return to it as a residence in the future, * *." Atchison Savings Bank v. Wheeler's Adm'r, 20 Kan. 625, 632.

Though no single fact or combination of facts is determinative, the court was justified in finding as it did in light of the following evidentiary matters: the homestead at one point of time was

clearly established; during her periods of absence she did not establish a homestead elsewhere or reside in such types of dwellings as generally lend themselves to establishment thereof; there was an absence of any other property owned by her which could be considered a homestead; she continued her farming operations on the property in question and her furnishings remained in the house; she continuously voted in the township of her homestead for many years; she continuously received her mail there up to and including the time in question; and she was physically occupying the dwelling thereon at the time of trial.

The case is remanded to the trial court with directions to reinstate the verdicts of the jury on Counts II and V. The judgment is affirmed in all other respects. No costs are awarded.