**In re Robert G. DITTMER, Luella Dittmer, Debtors.**

**Steven E. SIEBERS, Trustee, Plaintiff,**

**v.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Robert G. Dittmer and Luella Dittmer, Defendants.**

**Bankruptcy No. 87–70781.**
**Adv. No. 87–7271.**

United States Bankruptcy Court,
C.D. Illinois.

May 12, 1988.

Steven E. Siebers, Quincy, Ill., trustee.

Thomas W. O'Neal, Carthage, Ill., Hubert Staff, Quincy, Ill., for debtor.

Dennis W. Gorman, Quincy, Ill., for Federal Deposit Ins. Corp.

## OPINION

LARRY L. LESSEN, Chief Judge.

This matter is before the Court on the complaint of the Trustee objecting to the secured claim of the FDIC. The Trustee, the Debtors and the FDIC have filed motions for summary judgment.

The material facts, which are undisputed, are as follows:

The Debtor, Robert G. Dittmer, executed security agreements dated April 14, 1982, and April 30, 1982, in favor of the Mendon State Bank, pledging as security his equipment, livestock, crops, feed, seed, fertilizer and other supplies then owned or thereafter acquired. A financing statement reflecting the Bank's security interest was recorded on April 19, 1982, with the Recorder of Deeds for Adams County, Illinois.

On August 20, 1986, the Commissioner of Banks for the State of Illinois found the Bank to be insolvent and assumed possession and control pursuant to Ill.Rev.Stat. 1985, Ch. 17, para. 361–365. After posting notice of the Bank's failure at the Bank, the Commissioner appointed the FDIC as Receiver. From August 20, 1986, through November 11, 1986, notice that the Bank had been placed in receivership and the FDIC had been appointed receiver was published in the local weekly newspaper.

The FDIC as Receiver filed a petition in State Court seeking approval of a proposed sale of certain assets and transfer of liabilities formerly owned by the Bank. The assuming bank named in the petition was the First Midwest Bank/Quincy, National Association. The petition further proposed that any remaining assets not purchased by First Midwest Bank be sold to FDIC in its corporate capacity for a price of $7,067,000.00.

An Order was entered by the State Court on August 20, 1986, approving the petition filed by the FDIC authorizing the purchase and assumption by First Midwest Bank of the proposed assets and liabilities and the sale of the remaining assets, including the Debtor's loan, to the FDIC in its corporate capacity.

A written agreement was executed between FDIC as Receiver and FDIC in its corporate capacity to transfer those assets of the Bank not purchased by First Midwest Bank. The agreement provided that the FDIC as Receiver was to prepare a schedule of the assets subject to the agreement, to be incorporated, once completed, in the agreement.

On December 29, 1986, a continuation statement naming Robert G. Dittmer as

Debtor and "FDIC liquidator of Mendon State Bank" as secured party was filed with the Adams County Recorder.

On March 26, 1987, a continuation statement naming Robert G. Dittmer as Debtor and "Federal Deposit Insurance (sic) as Receiver for Mendon State Bank" as secured party was filed with the Adams County Recorder.

On May 4, 1987, the Debtor filed a petition for bankruptcy under Chapter 12 of the Bankruptcy Code.

On July 13, 1987, the FDIC filed a proof of claim in the amount of $179,939.30 for the balance due on the Debtor's loan, claiming a security interest in the Debtor's "equipment, livestock, crops and feeds as more fully described in the attached loan documentation."

The Trustee contends that the FDIC's security interest lapsed as a result of the FDIC's failure to comply with Sec. 9–403(3) of the Illinois Commercial Code, the provision governing the filing of a continuation statement, because no valid continuation statement was filed by April 19, 1987, five years from the date the original financing statement was filed.

Under Illinois law, a financing statement is effective for five years from the date of filing. Ill.Rev.Stat.1985, Ch. 26, Sec. 9–403(2). Section 9–403(3) provides that a continuation statement filed within six months prior to the expiration of the financing statement operates to continue the statement in force and effect for another five years. A continuation statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record and setting forth the name of the secured party of record and the debtor, the file number and date of filing of the financing statement, the name and address of the assignee, and a description of the collateral assigned. Ill.Rev.Stat.1985, Ch. 26, Sec. 9–403(3) and 405(2).

The Trustee's position is that the FDIC, having failed to attach a statement of assignment to the continuation statements it filed, has not perfected its security inter-

est. The FDIC maintains that it has an effective security interest, advancing four arguments: 1) the FDIC obtained the status of secured party of record for purposes of Sec. 9–403(3) and 9–405(2) as a consequence of having been appointed Receiver; 2) the FDIC need not comply with Sec. 9–403(3) and 9–405(2) to continue its perfected security interest; 3) the FDIC complied with the spirit of Sec. 9–403(3) and 9–405(2); and 4) strict compliance with Sec. 9–403(3) and 9–405(2) would have been impossible because the transfer from Mendon State Bank to the FDIC was not a consensual, voluntary transfer.

The Court first addresses the question of whether the FDIC had to comply with Sec. 9–403(3) in order to continue its perfected security interest as against the Trustee in bankruptcy. This question has two subparts: 1) is the filing of a written statement of assignment by a secured party other than the secured party of record a condition precedent to a continuing perfected status? 2) if so, is the FDIC a secured party other than the secured party of record?

██ The Court finds that the requirement set forth in Sec. 9–403(3) that an assignee file a statement of assignment together with a continuation statement *is* a condition precedent to preserving perfected status. The purpose underlying this requirement is "to ensure that the authority of a person (other than an existing secured party of record) filing a continuation statement would be clear from the record. *See* Sec. 9–405 and Illinois Code Comments thereto, and cf. Illinois Code Comments to Sec. 9–404(1) and 9–406." Illinois Code Comment to Sec. 9–403(3). Secs. 9–404(1) and 9–406 parallel 9–403(3), requiring the filing of a statement of assignment with a termination statement and a statement of release, respectively, if filed by someone other than the secured party of record. It is true that if a security interest perfected by filing is assigned, it remains perfected against the debtor and his creditors or transferees even though no statement of assignment is filed. *See* Ill.Rev.Stat.1985, Ch. 26, Sec. 9–302(2) and 9–405. However,

only the secured party of record can effectively file a continuation statement, release, termination statement or amendment. *See* Hawkland, Lord & Lewis UCC Series Sec. 9–405:02 (Art. 9). By filing a written statement of assignment with any of these filings, an assignee in effect becomes the secured party of record. Ill.Rev. Stat., Ch. 26, Sec. 9–405. Without filing such a statement establishing that he is the secured party of record, however, an assignee cannot file an effective continuation statement. *See* Hawkland, Lord & Lewis, *supra.* This is a mandatory provision. Thus, unless the FDIC can establish that it somehow became the secured party of record without filing a written statement of assignment, the continuation statement it filed is ineffective to continue its perfected status beyond the expiration of the original financing statement.

■ The FDIC maintains that it "stepped into the shoes" of the Bank when it was appointed Receiver, that this transfer was non-consensual and that compliance with Sec. 9–403(3) was not necessary and in fact would have been impossible. It further maintains that by virtue of this transfer the FDIC became the secured party of record, obviating any necessity to attach a written statement of assignment to the continuation statement it filed with the Adams County Recorder.

Without ruling on whether the FDIC as Receiver became the secured party of record by stepping into the shoes of the Bank, the Court finds that the FDIC in its corporate capacity failed to perfect its security interest by filing the requisite statement of assignment with its continuation statement.[1] The FDIC itself asserted in its petition to sell assets from itself as Receiver to itself as federal insurer of deposits that it operates in two separate, legally distinct capacities:

> In the context of a closed bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, the FDIC operates in two capacities. Pursuant to state law it operates as the Receiver of such bank. It simultaneously operates as the federal insurer of the Bank's deposits. Consequently, the courts have specifically held that these capacities are separate and legally distinct. See e.g., *Federal Deposit Insurance Corporation v. Ashley,* 585 F.2d 157 (6th Cir.1978); *Federal Deposit Insurance Corporation v. Godshall,* 558 F.2d 220 (4th Cir.1977); *Federal Deposit Insurance Corporation v. Glickman,* 450 F.2d 416 (9th Cir.1971); *Freeling v. Sebring,* 296 F.2d 244 (10th Cir.1961). So distinct are these capacities that federal statutes recognize the right of the Receiver to contract with the Corporation, 12 U.S.C. Section 1823(c)(2)(A) and (d). Brief in Support of Petition approving sale (filed with Adams County Circuit Court August 20, 1986, made part of Bankruptcy Court record) at 2.

A written contract of sale supported the transfer of the assets from the FDIC as Receiver to the FDIC in its corporate capacity. The contract was signed by two different people, one on behalf of the FDIC as Receiver and the other on behalf of the FDIC in its corporate capacity. Consideration of $7,067,000.00 was paid. The contract provided for the incorporation of a schedule of the assets covered, once completed by the Receiver. The FDIC could have attached this document reflecting the ultimate disposition of these assets—including the Debtor's loan—to the continuation statement filed. That would have been simple enough, and would have constituted substantial compliance with Sec. 9–403(3). Or the same two parties who signed the contract of sale could have executed a statement of assignment, attaching the schedule of assets to show what was covered. The Court is not charged with devising a method by which the FDIC could comply with Sec. 9–403(3). These options are mentioned to illustrate that compliance could have been effected.

---

**1.** In fact, the record reflects that the FDIC in its corporate capacity never filed a continuation statement at all. The Court does not purport to rule, however, on whether, had a statement of assignment been attached as required, the continuation statement filed would have been effective.

In a case involving the filing of a second financing statement, alleged to constitute substantial compliance with the requirement to file a continuation statement, an Ohio Bankruptcy Court held that the "second financing statement fails to include essential statutory elements of a continuation statement. Such disregard of a positive legislative enactment prescribing the conditions necessary for the preservation of a statutory lien cannot be overlooked." *In re Hays,* 47 B.R. 546 (Bankr.N.D.Ohio 1985), citing *Eastern Indiana Production Credit Association v. Farmers State Bank,* 31 Ohio App.2d 252, 287 N.E.2d 824 (1972). While the issue here is slightly different, the same reasoning applies—the positive legislative enactment requiring attachment of a written statement of assignment as an essential element of a continuation statement filed by a party other than the secured party of record cannot be overlooked. Even assuming, *arguendo,* that the FDIC as receiver became the secured party of record by being appointed receiver, the FDIC in its corporate capacity did not automatically acquire that status. It acted independently, executing a contract with the FDIC as receiver for the purchase of certain assets. The FDIC in its corporate capacity never established of record that it ultimately took ownership of those assets.

Thus, the FDIC in its corporate capacity failed to establish itself as secured party of record for purposes of filing a continuation statement. Because it filed as a party other than the secured party of record, the FDIC was required to attach a statement of assignment to the continuation statement filed. This was not done. Therefore, the continuation statements upon which the FDIC relies are ineffective to continue its perfected status. Summary judgment is granted in favor of the Trustee.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.