**FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Receiver of Ultimate
Savings Bank, F.S.B., Appellant,**

v.

**VICTORY LANES, Appellee.**

Civ. A. No. 4:93cv00048.

United States District Court,
E.D. Virginia,
Newport News Division.

Sept. 14, 1993.

Charles L. Williams, Thompson &
McMullan, P.C., Richmond, VA, for appellant.

Frank J. Santoro, Portsmouth, VA, for
appellee.

**618**

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

This appeal seeks review of a decision of the Bankruptcy Court striking two different claims of a secured creditor for the reasons that: (1) a UCC continuation statement was found to have been improperly filed because it identified the creditor in its corporate capacity, rather than in its capacity as receiver; and (2) a purported assignment was found to have extinguished an equipment lease. For the reasons set forth below, the decision of the Bankruptcy Court is reversed.

## STATEMENT OF FACTS

Victory Lanes, a Virginia limited partnership which operates a bowling alley, is the lessee under an equipment lease, which is dated November 26, 1986. Cardinal Leasing Company ("CLC"), the lessor, accepted the lease on December 31, 1986. At the time, CLC was a wholly owned subsidiary of Cardinal Savings and Loan Association ("Cardinal S & L") which subsequently changed its name to Ultimate Savings Bank, F.S.B. ("Ultimate) and was subjected thereafter to the receivership of the Federal Deposit Insurance Corporation ("FDIC/Receiver") pursuant to 12 U.S.C. § 1822(a). The parties stipulated that FDIC/Receiver had succeeded to the rights of Ultimate and CLC under the equipment lease.

Victory Lanes also is the maker of a promissory note dated April 16, 1987. FDIC/Receiver, as the successor to Ultimate, is the holder of that note and claims a security interest in personalty as the consequence of an original UCC financing statement filed by Ultimate's predecessor, Cardinal S & L, as to which FDIC/Receiver filed a continuation statement.

On September 16, 1992, Victory Lanes filed a petition for protection and reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101, *et seq.* On November 6, 1992, FDIC/Receiver filed a motion seeking relief from the automatic stay so that it could foreclose on realty and person-alty owned by Victory Lanes and otherwise obtain access to its security, including the equipment lease and the property covered by the UCC financing statements.

The Bankruptcy Court held a hearing on the motion, during which Victory Lanes interposed defenses to two aspects of the claims asserted by FDIC/Receiver. First, Victory Lanes argued that the UCC continuation statement, which had been filed for the purpose of extending the term of an admittedly valid original financing statement, was ineffective because it was signed by the FDIC in its corporate capacity as the secured party, rather than FDIC/Receiver. Second, Victory Lanes argued that a document entitled Assignment of Lease (the "Assignment"), which bore the typed name, but not the manual signature, of CLC's president, constituted a valid assignment by CLC of Victory Lanes' payments under the equipment lease, the effect of which was to discharge Victory Lanes from its obligation to make payments under the lease. Persuaded by both arguments, the Bankruptcy Court granted the motion to strike the claim of FDIC/Receiver to secured status pursuant to the financing statement and its claim to the rental payments owed under the equipment lease. Each issue is considered in turn.

## STANDARD OF REVIEW

■ Bankruptcy Rule 8013 provides that a district court, giving "due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses," shall not set aside the factual findings of the bankruptcy court unless they are clearly erroneous. Bankr.R. 8013. A bankruptcy court's finding of fact is "clearly erroneous" "when it is (1) not supported by substantial evidence; (2) contrary to the clear preponderance of the evidence; or (3) based upon an erroneous view of the law." *In re Rape*, 104 B.R. 741, 747 (W.D.N.C.1989) (quoting *In re Bartlett*, 92 B.R. 142, 143 (E.D.N.C.1988)).

■ The district court reviews *de novo* conclusions of law. *Travelers Insurance Co. v. Bryson Properties, (In re Bryson*

*Properties, XVIII),* 961 F.2d 496, 499 (4th Cir.1992); *see also, Brown v. Mt. Prospect State Bank (In re Muncrief),* 900 F.2d 1220, 1224 (8th Cir.1990); *Arizona Appetito's Stores, Inc. v. Paradise Village Inv. Co. (In re Arizona Appetito's Stores, Inc.),* 893 F.2d 216, 218 (9th Cir.1990); *Finney v. Smith,* 141 B.R. 94, 97 (E.D.Va.1992) (citing, *e.g., United States Trustee v. Kinser,* 128 B.R. 417, 418 (W.D.Va.1991)); *Bangert v. McCauley (In re McCauley),* 105 B.R. 315, 318 (E.D.Va.1989).

## DISCUSSION

### I. *The Validity of the Continuation Statement.*

Original financing statements, the validity and sufficiency of which are not challenged, were filed with the State Corporation Commission and in the Circuit Court of York County. After assuming its role as receiver of Ultimate, the FDIC simultaneously filed three UCC–3 Forms in the Circuit Court of York County.

The first form advised that there had been an assignment of the interest from the secured party identified in Item 2 of the form as:

FDIC AS RECEIVER OF ULTIMATE SAVINGS AND LOAN ASSOCIATION PREDECESSOR TO CARDINAL SAVINGS AND LOAN
[Richmond, Virginia address]

to the secured party designated in Item 10 of the form as:

FDIC OF RECEIVER OF ULTIMATE SAVINGS AND LOAN
[Rosemont, Illinois address]

The secured party's signature block on that form bore the typed designation "FDIC OF RECEIVER OF ULTIMATE SAVINGS & LOAN" and the manual signature and typed name of Cosetta Humphries, Liquidation Technician—ASU.

The second form advised that there had been an assignment of the interest held by the secured party identified in Item 2 of the form as:

FDIC AS RECEIVERSHIP OF ULTIMATE SAVINGS & LOAN
[Rosemont, Illinois address]

to the party identified in Item 10 of the form as:

FDIC AS RECEIVERSHIP OF ULTIMATE SAVINGS & LOAN IN ITS CORPORATE CAPACITY
[Rosemont, Illinois address]

The secured party's signature block on that form bore the typed designation "FDIC IN ITS CORPORATE CAPACITY" and the typed name, job description and signature of the same person who signed the first form.

The third form advised that the original financing statement had been continued. This form identified the secured party in Item 2 as "FDIC IN ITS CORPORATE CAPACITY [Rosemont, Illinois address]" and the same technician signed beneath the designation "FDIC IN ITS CORPORATE CAPACITY" in the signature block for the secured party.

The FDIC made the same three filings in the State Corporation Commission except that Item 10 of the first two forms contained the textual statement: "All collateral per original financing statement is being assigned" which did not appear in the corollary filings in the Circuit Court of York County.

The record does not disclose the reasons for filing three UCC–3 Forms. Nor is there any evidence explaining why the FDIC is mentioned in its corporate capacity. However, the parties agree that the FDIC, as a corporation, is a different legal entity than FDIC/Receiver and that the corporation has no interest in, or right to, the assets of Ultimate, the entity for which FDIC/Receiver acts as receiver.

On this record, FDIC/Receiver asserts that the continuation statement was salvaged by the exculpatory terms of Va.Code § 8.9–402(8) which provides that: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Victory Lanes contends that the exculpato-

ry provision of Va.Code § 8.9–402(8) is not applicable to continuation statements because Va.Code § 8.9–403, governing continuation statements, contains no exculpatory provision and because, in *Crestar Bank v. Neal, (In re Kitchin Equipment Co. of Va., Inc.)*, 960 F.2d 1242 (4th Cir.1992), our Court of Appeals held that the exculpatory provision did not apply to termination statements. The Bankruptcy Court, after reluctantly determining that it was bound by the decision in *Kitchin Equipment*, declined to apply the exculpatory provision and held that the continuation statement was ineffective which in turn meant that the original financing statement had lapsed, thereby depriving FDIC/Receiver of its secured status.

Resolution of this issue makes it necessary to assess the role of the continuation statement in the perfection of security interests under the UCC. Article 9 of the UCC, Va.Code § 8.9–101, *et seq.*, establishes a comprehensive scheme for the regulation of secured transactions and the perfection of security interests. Va.Code § 8.9–101, Official Comment. The filing of financing statements, which is central to that statutory scheme, is governed by Part 4 of Article 9. The first three sections of Part 4 prescribe the place for filing financing statements, their content and their duration, including a provision for extending their original five year effective term by filing a continuation statement, see Va. Code §§ 8.9–401, 402 and 403.

The financing statement system established in Article 9 and implemented in its Part 4 is a notice system.

> The purpose of notice filing, as explained in paragraph 2 of the Official Comments [to § 8.9–402] is to give notice that the secured party may have an interest in the collateral. Prospective creditors must make further inquiries about the complete state of affairs.

*(In re Kitchin)*, 960 F.2d at 1242, 1247. Once notice is given by the filing of a proper original financing statement, it is effective for a five year period. Va.Code § 8.9–403(2).

However, the secured creditor unilaterally may extend the period during which this notice is effective by filing a continuation statement within six months before the expiration of the original five year period. "A continuation statement must be signed by the secured party, identify the original statement by file number, and state that the original statement is still effective." Va.Code § 8.9–403(3). When the continuation statement is filed potential creditors are on notice that the secured party may have an interest in the listed collateral. The creditor must then "make further inquiry about the complete state of affairs." Hence, when considered in the context of the statutory scheme of which it is a part, a continuation statement serves the same purpose as a financing statement both in statutory contemplation and in actual effect.

The argument of Victory Lanes and the decision of the Bankruptcy Court hinge on the premise that, because the continuation statement was signed by the FDIC in its corporate capacity, rather than in its capacity as receiver, it was signed by the wrong legal entity which, in time, renders the continuation statement defective.

A similar argument was rejected by the Court of Appeals in *Unsecured Creditors Committee v. Marepcon Financial Corp., (In re Bumper Sales)*, 907 F.2d 1430 (4th Cir.1990) wherein the court applied Va. Code § 8.9–402(8) to salvage a financing statement that had been executed by the secured party in its trade name, rather than in its correct corporate name. The Court of Appeals explained that:

> In analyzing this claim, we look first to Section 9–402(1) of the Uniform Commercial Code (UCC), which states that a 'financing statement is sufficient if it gives the names of the debtor and the secured party,' among other things. Va.Code Ann. § 8.9–402(1) (Supp.1989) (emphasis added). Section 9–402(8) qualifies this requirement, providing that '[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously mislead-

ing' (emphasis added). The issue is 'whether or not 'a reasonably diligent searcher' would be misled by the irregularity.

*In re Bumper Sales,* 907 F.2d 1430, 1434–1435 (4th Cir.1990) (citations omitted). Finding that the financing statement adequately served to provide notice that the debtor's assets may be encumbered and that further inquiry was warranted, the Court of Appeals held that a reasonably diligent researcher would not have been misled by use of the secured creditor's trade name, even though the trade name was entirely different than the corporate name and thus gave a researcher no hint of the correct identity of the secured creditor.

The same rationale would apply to a continuation statement whose purpose is identical to that of a financing statement. Unfortunately, our Court of Appeals has not decided whether the exculpatory provision of UCC § 9–402(8) applies to continuation statements. However, other courts, in construing UCC § 9–403, "have adopted the concept that errors which are not seriously misleading do not render ineffective the filing of a continuation statement." *Paul Gaines Implement Co. v. United States, (In re Vincent Gaines Implement Co., Inc.),* 71 B.R. 14, 3 U.C.C.Rep.Serv.2d (Callaghan) 377 (Bkrtcy.E.D.Ak.1986). *See also, In re Barnes,* 15 U.C.C.Rep.Serv. (Callaghan) 956, 1974 WL 21729 (D.Me. 1974); *In re Edwards Equipment Co.,* 46 B.R. 689 (Bkrtcy.W.D.Okla.1985).

In *In re Vincent Gaines,* the continuation statement was correct except for an error in the number it ascribed to the original filing. The court reasoned:

> [E]ven though a creditor would be referred by the continuation statement to the incorrect original filing, he would be placed on notice to inquire.... The defect is not seriously misleading and is sufficient compliance with Arkansas law to render the filing effective.

71 B.R. 14, 15 (Bkrtcy.E.D.Ak.1986). The exculpatory terms of UCC § 9–402(8) also

have been applied to salvage a continuation statement that referred to an amended financing statement, rather than to the original financing statement. *In re Edwards Equip. Co.,* 46 B.R. 689 (Bkrtcy.W.D.Okla. 1985). The court reasoned that this result was required because the UCC was to be liberally interpreted in furtherance of its purpose to simplify commercial transactions and the law governing them.[1]

None of these decisions confront directly, however, the question whether UCC § 9–402(8), which by its terms applies to financing statements, applies also to continuation statements, which are controlled by UCC § 9–403, not by UCC § 9–402. Instead, each decision simply treats the continuation statement as if it was a financing statement, applies the exculpatory provision of UCC § 9–402(8) and then decides whether the alleged defect is minor or seriously misleading.

As explained previously, a continuation statement is part of a comprehensive scheme which regulates perfection of security interests. When assessed within the framework of the statutory scheme, a continuation statement appears to serve the same purpose as the original financing statement. Indeed, except as to the duration of the security interest, the continuation statement incorporates by reference the original financing statement whose term it extends. Considering the language and structure of the UCC, the purpose of continuation statements and their role in the UCC filing system and the decisions which, by implication, have considered continuation statements to be a genre of financing statements sufficient to enjoy the benefits of UCC § 9–402(8), the court concludes that a continuation statement is sufficiently akin to a financing statement as to warrant the application of the exculpatory provision of Va.Code § 8.9–402(8) to the resolution of irregularities in the continuation statement. This result also comports with the instruction of the Virginia legislature to construe and apply the act to pro-

---

**1.** *See also, In re Barnes,* 15 UCC Rep.Serv. (Callaghan) 956, 1974 WL21729 (D.Me.1974) where the court applied a similar provision of the UCC as adopted in Maine to an error in the place of filing.

mote its underlying purposes and policies, one of which is to simplify the law governing commercial transactions. Va.Code § 8.1–102(1) and (2)(a).

The decision in *Kitchin Equipment* does not require a different result. There, the Court of Appeals declined to apply Va.Code § 8.9–402(8) to termination statements, holding that:

This section [Va.Code § 8.9–402(8)] deals with financing statements and amendments. The drafters of the U.C.C. did not include a similar exculpatory provision in § 8.9–404 which deals with termination statements and the official comment does not disclose that § 8.9–402(8) was intended to apply to § 8.9–404.

*In re Kitchin Equip. Co. of Va., Inc.,* 960 F.2d at 1242–1246. The decision in *Kitchin Equipment* expressly noted the significant differences between the purpose and effect of termination statements and financing statements, respectively, in the scheme established by Part 4 of Article 9 and concluded that a termination statement is statutorily unique and serves a purpose substantially different than that served by a financing statement. And, principally for that reason, the Court of Appeals declined to extend to termination statements the benefit of the exculpatory provision applicable to financing statements under Va. Code § 8.9–402(8). The reasoning which led to that result in *Kitchin Equipment* would support the application of the exculpatory provision to a continuation statement because its role in the statutory scheme is essentially the same as that of a financing statement and, perhaps more importantly, is substantially different than the role of the termination statement. For this reason, the court concludes that the decision in *Kitchin Equipment* is not controlling here.

■ Accordingly, it becomes necessary to determine whether the misnomer in this case is "minor" and "not seriously misleading." *In re Kitchin Equipment Co. of Va., Inc.,* 960 F.2d at 1274. The dispositive inquiry in this assessment is: "whether or not a 'reasonably diligent researcher' would be misled by the irregularity." *In re Bumper Sales, Inc.,* 907 F.2d 1430,

1434–35 (4th Cir.1990) (citations omitted). From the face of the continuation statement, the reasonably diligent researcher is placed on notice that the debtors' assets may be encumbered and is given the name and address of the person and the entity to whom further inquiry may be directed. The misnomer here is neither major nor seriously misleading because the reasonably diligent researcher is told that the secured party is the FDIC and is given sufficient information about the original creditor as to be on notice that further inquiry is required to sort out the particulars. Indeed, the misstatement of the status in which the FDIC was acting is less serious than the misnomer found to have been minor and not seriously misleading in *In re Bumper Sales,* where the trade name used on the continuation statement bore no relation to the corporate name of the secured creditor and therefore gave the researcher less information than is provided by the continuation statement in this case.

For the foregoing reasons, the financing statement of FDIC/Receiver did not lapse and the decision of the Bankruptcy Court on that issue is reversed.

## II. *The FDIC's Interest Under the Equipment Lease.*

■ On the Schedule D it filed in the bankruptcy proceeding, Victory Lanes listed CLC as a secured creditor holding a claim under the equipment lease in the amount of $310,900.64, of which $260,-900.64 was unsecured because the collateral was valued at $50,000.00. On its Schedule G, Victory Lanes listed the equipment lease with CLC as an executory contract/unexpired lease requiring monthly payments of $5,232.10 for 120 months.

Bankruptcy Rule 3003(b)(1) provides that:

The schedule of liabilities filed pursuant to § 521(1) of the code shall constitute prima facie evidence of the validity and amount of the claims of creditors unless they are scheduled as disputed, contingent or unliquidated.

Under the rule, there is prima facie proof to support the claim of FDIC/Receiver under the equipment lease. Hence, Victory Lanes was obligated to present evidence to the contrary.

The record shows that Victory Lanes had made 39 payments to CLC under the equipment lease. Payments were stopped only because Victory Lanes was unable financially to continue making them. Victory Lanes did not seek return of the previously made 39 payments totalling $209,901.12.

At the hearing on the motion for relief from stay, Victory Lanes for the first time asserted that the claim of FDIC/Receiver under the equipment lease was barred because the Assignment, the execution of which was a disputed fact, permitted Victory Lanes to make payments to itself. In support of this contention, Victory Lanes relied on a stipulation that the Assignment was an authentic document. The stipulation also reflected, however, that the parties were in disagreement over the effect and enforceability of the Assignment.

From this evidentiary base, Victory Lanes argued before the Bankruptcy Court and argues here on appeal that the Assignment was legally executed by CLC because the typed name of CLC and its president appeared at the end of the Assignment, to wit:

Lessor: <u>Cardinal Leasing Corporation</u>
                  Assignor
By:      <u>Paul H. Dardis, President</u>
                  Title

According to Victory Lanes, this typed inscription constitutes CLC's signature within the meaning of Va.Code § 8.1–201(39) which provides:

> *'Signed'* includes any symbol executed or adopted by a party with present intention to authenticate a writing.[2]

The Assignment listed Victory Lanes as both the Assignee and the Lessee of the equipment lease. According to Victory Lanes, when CLC executed the Assignment, it assigned to Victory Lanes the lease payments owed to CLC by Victory Lanes under the equipment lease. This, said Victory Lanes, was a merger of title which had the effect of extinguishing its obligation to make the lease payments. On this record, the Bankruptcy Court granted the motion to strike the claim of FDIC/Receiver under the equipment lease, holding that "the lease relationship was destroyed."

The record is silent as to why CLC would have executed an assignment to Victory Lanes of the lease payments it was to have received from Victory Lanes. Neither counsel for FDIC/Receiver nor counsel for Victory Lanes could offer a commercially sensible reason for the Assignment to have been structured in that fashion. However, it is not necessary to resolve that somewhat perplexing issue because, as a matter of law, Victory Lanes did not satisfy its obligation to prove that the Assignment was "signed" within the meaning of Va. Code § 8.1–201(39).

The undisputed record shows that, for 39 months after the date of the purported Assignment, Victory Lanes paid CLC the payments required by the equipment lease. The record shows that those payments stopped solely because of Victory Lanes' financial distress, not because of the Assignment. There was no evidence from which a finder of fact could infer that the typed name of CLC or its president was intended as a signature or affixed for the purpose of authenticating the Assignment as a legally effective instrument. The record is therefore fatal to Victory Lanes' position. This is particularly true when the paucity of evidence is considered in perspective of the fact that neither party can identify a commercially valid reason why CLC would have bound itself to a document which would have deprived it of the payments to which it otherwise would be entitled under the lease.

---

**2.** At oral argument, counsel for Victory Lanes agreed that the stipulation as to the authenticity of the Assignment did not constitute an agreement by FDIC/Receiver as to authentication as that term is used in the statute.

Accordingly, the decision of the Bankruptcy Court on this aspect of the claim of FDIC/Receiver is also reversed.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record.

It is so ORDERED.