BRAMS LIMITED, A NEBRASKA PARTNERSHIP, APPELLEE, V.
ELF ENTERPRISES, INC., A NEBRASKA CORPORATION, DOING
BUSINESS AS ECCO MOTORS, AND THOMAS RINE, APPELLEES,
AND BANK OF PAPILLION, APPELLANT.

573 N.W.2d 139

Filed February 6, 1998.   No. S-96-628.

James C. Cripe for appellant.

Dean J. Jungers for appellee Brams Ltd.

CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CONNOLLY, J.

This case presents the question: Between two creditors, Brams Limited and the Bank of Papillion, who has priority over a security interest in a debtor's collateral? The security interest at issue was originally given to the Bank of the Midlands, which after a merger or acquisition, became the Bank of Papillion. The Bank of Papillion filed a continuation statement on the security interest but failed to attach a written statement of assignment as required by Neb. U.C.C. § 9-403(3) (Reissue 1992). The district court determined the continuation statement was not valid because a separate written and signed statement of assignment was not attached, and thus, the interest of the Bank of Papillion had lapsed. We conclude that even though a written assignment was not attached, the continuation statement filed by the Bank of Papillion was in substantial compliance with § 9-403(3), and the continuation statement filed by the Bank of Papillion was valid. Accordingly, we reverse.

## BACKGROUND

Elf Enterprises, Inc., doing business as Ecco Motors, gave the Bank of the Midlands a security interest in all of its personal property. A financing statement covering the property was filed by the Bank of the Midlands on April 12, 1989. Later, on April 15, Ecco Motors gave appellee Brams a security interest in the same property. The security interest was given to Brams pursuant to a lease that was filed by Brams on October 3, 1991.

Effective November 10, 1989, the appellant, Bank of Papillion, acquired the Bank of the Midlands and, in the process, acquired all of the assets and obligations of the Bank of the Midlands. Although the district court states in its order that the Bank of Papillion "purchased" the Bank of the Midlands,

the acquisition is described in the record as a merger. In any event, whether the transaction was a merger or an acquisition is not crucial to our decision. The record indicates that at the time of the "merger" or "defacto merger," the corporation, Bank of the Midlands, dissolved, and the Bank of the Midlands merged into, and became part of, the Bank of Papillion.

On January 3, 1994, the Bank of Papillion filed a continuation statement of the Bank of the Midlands' security interest in Ecco Motors' property. The continuation statement was signed by "Bank of Papillion Formerly Bank of the Midlands." The continuation statement was not accompanied by a separate written statement of assignment. Brams filed a continuation of its security interest on July 7, 1992.

Following an auction of Ecco Motors' property in September 1994, the Bank of Papillion obtained the proceeds of the auction in the amount of $12,179. The question before the district court relevant to this appeal was, Who was entitled to those proceeds—the Bank of Papillion or Brams? The district court determined that when the Bank of Papillion filed the continuation statement, the statement was not effective because, pursuant to § 9-403(3), a continuation statement that is not signed by the original secured party of record must be accompanied by a separate written statement of assignment. The district court determined this was not done and, as a result, found the original security interest had lapsed after 5 years on April 12, 1994, while Brams' interest remained in effect at the time of the auction. Accordingly, the district court found Brams was entitled to the proceeds.

## ASSIGNMENT OF ERROR

The Bank of Papillion assigns as error the district court's determination that a continuation statement filed by a bank that has changed its name since the filing of the original financial statement is fatally defective if it is not accompanied by a written statement of assignment.

## STANDARD OF REVIEW

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Continental Western Ins. Co. v. Swartzendruber, ante* p. 365,

570 N.W.2d 708 (1997); *Wolgamott v. Abramson, ante* p. 350, 570 N.W.2d 818 (1997).

## ANALYSIS

Brams contends that under the plain language of § 9-403(3), a separate written statement of assignment should have been attached to the continuation statement filed by the Bank of Papillion, and because no such statement was attached, the continuation statement the Bank of Papillion filed was invalid. The Bank of Papillion contends the absence of a separate written statement of assignment does not render the continuation statement ineffective because any error that occurred was not seriously misleading.

Essentially, the Bank of Papillion is asking this court to read into § 9-403(3), which deals with continuation statements, the substantial compliance provision of Neb. U.C.C. § 9-402(8) (Reissue 1992) applicable to financing statements. Section 9-402(8) states that a financing statement substantially complying with the requirements of § 9-402 is effective, even if it contains minor errors that are not seriously misleading. Section 9-403(3), applicable to continuation statements, does not contain such a provision. Thus, Brams argues that the plain language of § 9-403(3) should control.

Section 9-403(3) states:

> Any such continuation statement must be signed by the secured party, identify the original statement by file number, and state that the original statement is still effective. A continuation statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record . . . .

However, § 9-402(8), applicable to the filing of financing statements, states in part, "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." Furthermore, comment 9 to § 9-402 states in part, "Subsection (8) is in line with the policy of [article 9] to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of

such statutory requirements in which courts have occasionally indulged themselves."

This court has not addressed the issue of whether the substantial compliance provision of § 9-402(8) applies to the area of continuation statements in § 9-403(3). However, jurisdictions that have addressed the issue have almost universally applied principles of substantial compliance to continuation statements even though the U.C.C. does not include language regarding substantial compliance in § 9-403. See, *In re Kruckenberg*, 160 B.R. 663 (Bankr. D. Kan. 1993); *F.D.I.C. v. Victory Lanes*, 158 B.R. 617 (Bankr. E.D. Va. 1993); *In re Cohutta Mills, Inc.*, 108 B.R. 815 (Bankr. N.D. Ga. 1989); *In re Adam*, 96 B.R. 249 (Bankr. D.N.D. 1989); *In re Vincent Gaines Implement Co., Inc.*, 71 B.R. 14 (Bankr. E.D. Ark. 1986); *In re Edwards Equipment Co.*, 46 B.R. 689 (Bankr. W.D. Okla. 1985); *In re Barnes*, 15 UCC Rep. Serv. (Callaghan) 956, (D. Me. 1974).

The reason most often cited for such a rule is that the article 9 system of filing financing statements is a system under which prospective creditors are able to gain notice that a secured party may have an interest in the collateral, but prospective creditors must make further inquiries about the complete state of affairs. *F.D.I.C. v. Victory Lanes, supra.* Because continuation statements are part of the same notice-filing scheme, a continuation statement serves the same purpose as a financing statement because it places potential creditors on notice that another creditor might have an interest in the collateral and contemplates that the potential creditor will make further inquiries into the matter. *F.D.I.C. v. Victory Lanes, supra.* See, also, *In re Kruckenberg, supra* (stating that financing statements and continuation statements serve mutual purpose of giving notice to creditors); *In re Edwards Equipment Co.*, 46 B.R. at 691 (stating that financing statement and its continuation statement are "inextricably entwined"). Accordingly, it is logical that the substantial compliance rule applicable to financing statements under § 9-402(8) should also apply to continuation statements under § 9-403(3). *F.D.I.C. v. Victory Lanes, supra.* See, also, Barkley Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 2.14 at 2-164 (rev. ed. 1993) (stating agreement with application of substantial compliance rule to field of continuation statements).

We have recognized that the purposes of the article 9 filing system are to provide notice and to simplify the filing process. In *North Platte State Bank v. Production Credit Assn.*, 189 Neb. 44, 55, 200 N.W.2d 1, 8 (1972), we stated:

> "The fundamental purpose of Art. 9 of the code is to make the process of perfecting a security interest easy, simple, and certain. It was intended to be a complete reversal of prior chattel security law and to rid the unaware of the traps of requirement of specific types of acknowledgements, technical affidavits of consideration, selection of specific proper forms, and other pitfalls that were not uncommon. The code very simply and briefly provides for a notice-filing procedure with a minimum of information required . . . ."

See, also, *Barelmann v. Fox*, 239 Neb. 771, 478 N.W.2d 548 (1992). When dealing with financing statements, we have declined to follow a strict statutory construction that would require literal, or almost literal, compliance with the words of § 9-402. See *Mid-Amer. Dairymen, Inc. v. Newman Grove Coop. Creamery Co., Inc.*, 191 Neb. 74, 214 N.W.2d 18 (1974). In light of the above-stated purposes of article 9, we are persuaded by the weight of authority from other jurisdictions and conclude that principles of substantial compliance are applicable to the filing of continuation statements under § 9-403(3).

Having determined that principles of substantial compliance are applicable, we must address whether the Bank of Papillion substantially complied with the requirements of § 9-403(3). The issue has also been described as " 'whether or not a "reasonably diligent researcher" would be misled by the irregularity.' " *F.D.I.C. v. Victory Lanes*, 158 B.R. 617, 622 (Bankr. E.D. Va. 1993). Only a few courts have addressed the specific issue of whether the failure to attach a written statement of assignment will render a continuation statement ineffective when the original secured party of record has changed its name or merged with another entity.

The case of *In re Kruckenberg*, 160 B.R. 663 (Bankr. D. Kan. 1993), is directly on point factually with the instant case. In *In re Kruckenberg*, financing statements were filed with the original secured party listed as the Isabel State Bank. Following an

agreement under which the Isabel State Bank merged with the First National Bank of Medicine Lodge, continuation statements were filed which listed the secured party as " 'the First National Bank of Medicine Lodge, formerly Isabel State Bank.' " *Id.* at 666. A separate written statement of assignment was not attached. The U.S. District Court for the District of Kansas found that at most, any errors in the continuation statements amounted to mere " 'harmless error[s].' " *Id.* at 670. In particular, the court noted that continuation statements are indexed according to the debtor's name and that a creditor searching the files would not be misled by the manner in which the continuation statements were filed. Furthermore, the court stated that the secured party clearly listed its former name and stated that "[i]t is difficult to accept that a creditor would be unable to make the connection." *Id.* Thus, the court found the continuation statements "easily facilitate[d] the notice-filing policy of Article Nine," *id.*, and refused to invalidate them.

In *F.D.I.C. v. Victory Lanes, supra,* the Federal Deposit Insurance Corporation signed continuation statements in its corporate capacity when it should have signed them in its capacity as a receiver. The U.S. District Court for the Eastern District of Virginia found that the error was minor and, as such, would not act to make the continuation statements ineffective. In reaching this conclusion, the court applied the test of whether or not a reasonably diligent researcher would be misled by the irregularity. The court then concluded that from the face of the continuation statement, a prospective researcher was put on notice that the debtors' assets may be encumbered and was given the name and address of the entity to whom further inquiry could be directed. Thus, the misnomer in the case was not seriously misleading.

Brams cites to the case *In re Dittmer,* 102 B.R. 143 (Bankr. C.D. Ill. 1988), to support its position that the continuation statement signed by the Bank of Papillion was ineffective. However, *In re Dittmer* involved a sale of assets between two separate and legally distinct entities, both of whom were still in existence at the time the continuation statements at issue in *In re Dittmer* were filed. The instant case does not involve the partial sale of assets between two independent entities. Rather, the

Bank of the Midlands ceased to exist at the time its assets were acquired or it was merged with and became part of the Bank of Papillion.

As illustrated by *In re Kruckenberg* and *Victory Lanes*, the continuation statement filed by the Bank of Papillion was in substantial compliance with the requirements of § 9-403(3) and cannot be said to be seriously misleading. From the face of the continuation statement, it was clear that Ecco Motors' property might be encumbered, and the address of who to contact for more information was available. Furthermore, as in *In re Kruckenberg*, it is difficult to imagine that Brams was misled in any way when the continuation statement was signed "Bank of Papillion Formerly Bank of the Midlands." Thus, we conclude the continuation statement filed by the Bank of Papillion was in substantial compliance with the requirements of § 9-403(3). Accordingly, we reverse the order of the district court.

REVERSED.

WHITE, C.J., participating on briefs.