No. 32,708

CLARA M. CORYELL, *Appellee*, v. J. HERSCHEL HARDY, *Appellant*
(FRANKLIN BOONE et al. *Defendants*).

(58 P. 2d 1151)

Opinion filed July 3, 1936.

A. V. Roberts, Benjamin F. Hegler, both of Wichita, and U. S. Weary, of Junction City, for the appellant.

I. M. Platt, of Junction City, and George Clammer, of Manhattan, for appellee Clara M. Coryell; James V. Humphrey and Arthur S. Humphrey, both of Junction City, for appellee Minnie Marsh White.

The opinion of the court was delivered by

THIELE, J.: This was an action to determine the respective rights of seller and purchaser under a real-estate contract, as well as the rights of certain lienholders, and from the judgment of the trial court the purchaser appeals.

There is little, if any, dispute as to the facts. Frank D. Coryell, husband of the plaintiff, appears to have owned the real estate in question. On October 14, 1921, he and his wife mortgaged it to Fred I. Boone and Ellis T. Poland to secure a note for $47,000 payable in annual installments of $3,000 on the first day of October of each year thereafter. This mortgage and the note secured were afterwards assigned to the Manhattan Building, Loan and Savings Association, hereafter referred to as the association. On December 13, 1921, Frank D. Coryell and his wife mortgaged the real estate to Minnie Marsh White to secure a note for $10,000 due five years after date. Not long after these mortgages were made Frank D. Coryell died. His will was admitted to probate, and his widow, plaintiff here, was appointed executrix of his estate. Many claims were filed against his estate. It is not clear from the record how many of them were allowed in the probate court, or of those allowed how many were paid according to the records of that court, but the testimony showed they were all paid and that Mrs. Coryell had receipts therefor.

On February 11, 1927, Clara M. Coryell and the defendant, J.

Herschel Hardy, entered into a contract whereby she agreed to sell and he agreed to buy certain described real estate in Junction City, Kan. The purchaser agreed to pay the seller at a designated trust company, or at a designated bank, the sum of $105,000, of which $8,000 was paid at execution of the contract, the remainder to be paid in annual installments varying from $3,500 on March 1, 1928, to $12,000 on March 1, 1942, all deferred payments bearing interest. All rentals were to be collected and deposited in the trust company or the bank, such trust company or bank to act as trustee to hold and apply the same as provided. For the first, second and third years all rents collected, not in excess of the present total rents, were to be applied to payment of taxes, interest, insurance premiums and the payments due on the principal sum, any excess to be subject to the check of the purchaser, except that excess rents over the then existing rents were to be applied on future payments. After the third year all rents collected were to be applied to the stipulated payments on the consideration, and no part thereof was to be subject to the purchaser's check. It was agreed that after March 1, 1930, the purchaser pledged as further security for the purchase price all of the rents, revenues and profits from the building, and the purchaser selected the trust company or the bank, as trustee, to collect, hold and deposit said rents and apply the same as provided. By another paragraph it was provided the seller had the right to renew, refund or float the then present indebtedness on the premises, providing she desired so to do, but the mortgage should not exceed $50,000 and should not be made payable in any larger amounts than the annual payments, plus interest, provided to be paid by the purchaser. We here note the contract does not in any place state what the then present indebtedness was, either in nature or amount. The contract further provided the purchaser should keep the premises free and clear of all liens and encumbrances, and the improvements in good repair, and insured in financially solvent insurance companies approved by the seller. All of the covenants and agreements were made binding on the heirs, executors, administrators, successors and assigns of the respective parties. It was provided the purchaser have possession on March 1, 1927, subject to the rights of tenants. The seller agreed to furnish within thirty days an abstract of title showing good and merchantable title in her, free and clear of all encumbrances except mortgages then of record. The contract also contained this paragraph:

"It is further covenanted and agreed that in the event the parties of the second part fail to comply with the payments herein provided, or to keep the property insured as herein specified, or fail to do any act or thing that is binding upon them so to do under and by virtue of the terms of this contract for a period of six months after the payments are due, or the obligation or thing to be discharged, then the party of the first part may without notice declare a forfeiture of this contract and of all the rights, covenants and agreements contained herein and proceed to foreclose the same at once. Time is of the essence of this contract."

The contract also contained numerous other provisions not of present interest. The contract was executed in triplicate by the two parties and a short trust agreement, whereby the trust company and the bank accepted the trust, was appended to the contract. The contract makes no specific provision that when the purchaser completes his payments he shall be entitled to a deed, either warranty or quit-claim. However, at the time the contract was made, Clara M. Coryell, designating herself as widow and sole devisee of Frank Coryell, made a warranty deed to J. Herschel Hardy, conveying the described real estate for a stated consideration of $105,000, warranting the same free and clear of encumbrance. This deed seems to have been deposited with the trust company for delivery when the purchase price was paid.

Notwithstanding the provisions of the contract for application of rents collected, from the inception the trustee, who under the circumstances represented both seller and purchaser and without objection from either, collected the rents, and out of the same paid repair bills, taxes, insurance premiums, and applied balances remaining on the interest and payments due to the seller under the contract. Without attempting an accurate statement, up to 1933 the income seems to have been sufficient to meet all such items. Owing, possibly, to a decrease in rents, coupled with the fact the annual payments due under the contract were increasing yearly in amount, the rents became insufficient, at least under the manner and method being followed, and the purchaser not advancing the differences, the payments due on the contract became in arrears. About August 10, 1934, the trust company was succeeded by the bank as trustee. The trust company at that time turned over to the bank the sum of $6,912.59. On September 11, 1934, Mrs. Coryell, by an agent, served notice on Hardy that under the contract he was in arrears $9,266.84 on interest and $2,500 on payments of principal, on the basis that $7,000 in the bank be applied on the principal pay-

ments, that having been done September 10, 1934. She demanded an immediate adjustment of the matter, either by Hardy's payment of the balance due or the cancellation of the contract, and stated that if the matter was not disposed of by September 22, 1934, it would be necessary to proceed to protect her interest.

Thereafter Mrs. Coryell instituted this action in which she made Hardy, the purchaser, and the association and Minnie Marsh White, mortgagees, defendants. Her petition set up the contract with Hardy and his default in payments in an amount in excess of $12,000, his failure to keep the property in repair, and that he was attempting to perform all of his financial obligations from the rents received and not otherwise. She also set up the two mortgages, and that by reason of Hardy's default she had become in default on the mortgages. She further alleged that she had fully performed under the contract with Hardy, but if not she was ready, able and willing so to do; that Hardy was in possession and enjoying use of rents and profits, but although in default, refused to surrender possession or permit cancellation of the contract; that Hardy was in default in payment of taxes and that because of all her allegations of fact it was inequitable, unjust and unfair to permit him to continue in possession of the premises and to continue in default in his payments. Her prayer was that Hardy be compelled to comply with the provisions of the contract by placing the premises in repair, making up payments in default, and, failing to do so, that he be ejected and possession given to plaintiff, and that during pendency of the action a receiver be appointed to take charge of the property. She also prayed that the mortgagees be required to set up their interests in the property.

Hardy's answer admitted the contract and his possession of the premises, and denied default on his part under the contract or that he was to pay any moneys to the mortgagees, or that plaintiff had performed, etc. By way of cross petition, he set up his version of the contract and alleged plaintiff's failure to furnish abstract of title, and her failure to clear the premises from the mortgages; that there were unsatisfied claims against her husband's estate in the probate court, constituting a cloud on the title to the real estate, and that the rents collected by the trustee had not been properly applied, and that plaintiff had no standing in a court of equity to claim the contract was forfeited. As a further defense to cancellation of the contract he alleged plaintiff had not tendered him what he had paid. He also

alleged the contract was in fact a mortgage for the debt therein contracted and should be established as a mortgage lien on the premises. Among other further allegations Hardy stated he was not in default; that plaintiff, by reason of her defaults and failure to clear the property of mortgages and clouds thereon, placed herself in position that she cannot deliver a free and clear title, etc.; that she failed to register the contract and pay the tax thereon as required by law and that her petition did not state facts sufficient to constitute a cause of action against him. The association filed its answer and cross petition, claiming a balance due it in the sum of $18,360, and praying for foreclosure of its mortgage. Hardy's answer denied generally, but neither admitted nor denied the making of the mortgage and demanded strict proof of the association's rights. His prayer was that the association's rights be determined and that he be held the owner of the property with right of redemption, etc. Minnie Marsh White filed her answer and cross petition alleging there was due her $10,400, and asking foreclosure of her mortgage. Hardy's answer admitted she was a nonresident of Kansas, raised many issues concerning the execution of the mortgage and that it was never extended under any order of the probate court; that her note was finally due December 13, 1926, and that her cause of action was barred. He also alleged her failure to register the mortgage and pay the tax required, and prayed that she take nothing. We need not recite the allegations of various replies filed.

After a trial, at which all parties were represented, the court found there was due the association on its mortgage the sum of $18,460.98, and that it had a first lien; that there was due Minnie Marsh White the sum of $10,590, and that she had a second lien, and that if plaintiff fail for thirty days to pay said sums or either of them, an order of sale issue and the proceeds of sale be applied as directed in the order. The court further found Hardy was in default in payment of sums due from him to plaintiff in the sum of $12,-516.46, and that if within forty-five days he pay said sum the default be set aside and the contract reinstated, otherwise the contract should be canceled and held for naught and plaintiff should be put into possession of said real estate. Judgment was entered accordingly. It was further ordered the sums theretofore collected from the premises and in possession of the bank as trustee should be applied first to payment of taxes, and second in payment to plaintiff. Hardy's motion for a new trial was denied, and he appeals.

Appellant contends the ruling of the trial court is to the effect the contract in question was an option contract, that such a holding is erroneous, and that the contract is in effect a mortgage and that his rights' thereunder can be determined and ended only by foreclosure proceedings under which he would have full rights of redemption. The plaintiff appellee does not admit the contract constitutes a mortgage, but contends she brought the action, equitable in its nature, to have the rights of the respective parties determined.

It appears the action was to determine right of possession to real estate, such right being largely dependent upon the construction of the contract. As has been heretofore noted, there is no controversy as to the amounts paid on the contract, or of the disposition made of them. There is controversy as to the rights of each party, and to a degree as to whether rent moneys received by the trustee were properly applied, but all such questions are of law, and under the circumstances it was the duty of the trial court, as it is of this court, to construe the instruments, and apply the construction to the admitted facts to arrive at such judgment as should be rendered.

The details of the contract have been previously mentioned. Briefly stated, the contract was not in form an option contract, although under it if the purchaser did not perform it could be forfeited. Under it Mrs. Coryell agreed to sell, and Hardy agreed to buy at a stated consideration to be paid in installments at stated times. The contract did not reserve title in the seller, nor did it presently pass it to the purchaser. It was silent as to when the deed, executed as above mentioned, should be delivered, except in an instance not here material, as it was never availed of. It was clear, however, that the purchaser was to pay a stated consideration, and leaving aside the deed executed and placed in escrow, although not provided in the written contract, whenever the consideration was fully paid, the purchaser would have been entitled to a deed. However indefinite the contract may have been in those particulars, it did provide for a trustee to collect and dispose of the rents. We shall not here discuss the performance of its duties by the trustee, but shall assume that its handling of the funds received by it met full approval of the purchaser, one of its principals. The contract provided, however, that if the purchaser for a period of six months failed to do anything binding upon him so to do under the contract, the seller might, without notice, declare a forfeiture of the contract "and of all the rights, covenants and agreements contained herein

and proceed to foreclose the same at once." Time was of the essence of the contract. It is true this clause, or any other clause, did not provide that in event of forfeiture the purchaser would forfeit what he had paid, but the court had before it a contract showing a down payment of $8,000 on a $105,000 transaction, together with proof that although thousands of dollars of rents were collected and variously, applied, so far as payments from other sources by the purchaser are concerned, that he actually paid in less than $2,000, or a total of less than $10,000 on the $105,000 transaction. In *Yost v. Guinn,* 106 Kan. 465, 467, 188 Pac. 427, where a situation similar to the one here presented was involved, it was said:

"The general rule is that where land is sold in part upon credit, under a contract that the deed is to be made upon completion of payment of the agreed price at a fixed time, which is not made of the essence of the agreement, no provision for forfeiture being made, the purchaser, upon taking possession, becomes the equitable owner, the vendor retaining the legal title only as security for the unpaid balance of the purchase price, the relations of the parties being substantially that of mortgagor and mortgagee. (*Courtney v. Woodworth,* 9 Kan. 443, 451; *Jones v. Hollister,* 51 Kan. 310, 32 Pac. 1115; 27 Cyc. 981.) Where the stipulated time of payment has not been made essential by the terms of the agreement, either party may make it so by tendering performance on his own part, and demanding that the other perform within a fixed period. (*Roberts v. Yaw,* 62 Kan. 43, 61 Pac. 409.) Where the vendor does this and the purchaser remains in default, the former, in a proper case, may have full title reinvested in himself without returning the part of the price that he has received. (*Id.*) As such a proceeding involves something of the element of a forfeiture, it is subject to the control of the court to the extent of seeing that the result reached shall not be inequitable. The right of the vendor to such a settlement is not absolute, and might be affected by the amount paid as compared with that still owing, as well as by other considerations. (*Campbell v. Town Co.,* 69 Kan. 314, 76 Pac. 839.) Where the purchaser abandons the deal without justification, he is not entitled to a return of any part of what he has paid. (*Wensler v. Tilke,* 97 Kan. 567, 155 Pac. 946; Note, L. R. A. 1918B 544.)" (p. 467.)

In the case before us time was of the essence of the contract, and if it was waived by the seller the condition was reinstated by her written demand on the purchaser that he perform. We have examined the many decisions cited by Hardy with respect to deeds being construed to be mortgages. We agree with those decisions, but they are not in point here. Under the contract and the admitted facts, the trial court cannot be said to have erred in holding that there was no equitable mortgage and that the contract should be enforced according to its terms (*Heard v. Gephart,* 118

Kan. 82, 233 Pac. 1044), unless equitable considerations require some modifications. The matter of equitable considerations will be noticed later.

We need not comment further on the question of Hardy's claim of rights of redemption. In any event, he would only have such rights if it be determined the contract constitutes a mortgage, and what we have said disposes of that.

The appellant further complains the trial court committed error in receiving in evidence the two mortgages held by the association and by Minnie Marsh White, and the contract between himself and Mrs. Coryell because of failure to show tax paid. Both of the mortgages were given prior to the enactment of the mortgage registration act (Laws 1925, ch. 273; R. S. 1933 Supp. 79-3101 *et seq.*), and it may be doubted that it applies. However that might be, the assets of the association were taxed in a manner different from that of an individual mortgage holder, and there is no proof whatever the association did not pay its full ad valorem tax on all its assets. There is no showing about taxes on the mortgage while it was held by Boone and Poland. It was acquired by the association in June, 1930, and when it was first taxable as an asset of the association R. S. 1933 Supp. 79-325a was in force and effect. As has been stated, there was no proof that compliance with that act was not had and done. Insofar as the White mortgage is concerned, it was agreed that Mrs. White had never been a resident of Kansas, and the mortgage having been given before the act was passed, it could not affect her on any theory, that nevertheless she must have paid ad valorem tax on it. Insofar as the contract of Mrs. Coryell and Hardy is concerned, it may be observed that both had to rely on it. Except for it, Hardy had nothing to evidence his interest in the real estate. The statute defines the term "mortgage" to include executory contracts for the sale of real estate, and provides such a "mortgage" shall not be received in evidence unless the tax is paid. Prior to the time the contract was offered, tax was paid. That it was not paid immediately after the contract was made makes no difference; that the amount of tax that was paid may not have been fully sufficient cannot avail appellant—that is the concern of the tax-collecting authorities.

Appellant further complains the trial court erred in not computing the balance presently due on the contract according to its literal terms. Under the contract, after the third year, rents received by

the trustee should have been applied to interest on the amount remaining unpaid and to reduction of payments. The trustee, who represented both Mrs. Coryell and Hardy, paid taxes, insurance premiums and repairs, all of which should have been paid by Hardy from sources other than rents. What was actually done, however, was with consent of all parties—in the end Hardy was not out of pocket one cent by reason thereof, and at this late date we refuse to say the trial court erred in adopting the parties' own method of performance of the contract.

It is further contended that the White mortgage is barred by the statute of limitations. It is true the note was due when the contract under consideration was made. It is argued the note having been given by Frank D. Coryell could not be extended as to time of payment. Mrs. Coryell was a signer on the note, and after the death of her husband the sole owner of the mortgaged real estate. If the mortgagee was content to look to the personal liability of Mrs. Coryell, and the pledged real estate, for the ultimate satisfaction of the debt she could do so. There is no dispute that payments of interest were made on the note up to within a few months of the filing of the action. The contention the note and mortgage were barred by the statute of limitations is not good.

Appellant also urges that Mrs. Coryell, by not paying off the mortgage liens, has put it out of her power to perform. That may have been the situation when the decree was rendered, but it was not the case when he made default under the contract. When the contract was made the White note was due. The note held by the association was payable in installments and was not in arrears. The contract recognized Mrs. Coryell's right to renew or refund this indebtedness. When appellant first defaulted he did not claim it was on account of these mortgages, in fact, under a literal construction of the contract he defaulted when, after the third year, he failed to pay taxes, insurance premiums and repairs, which were ultimately taken out of rents which should have been paid to Mrs. Coryell in reduction of the purchase price. Neither did he claim prior to the filing of the suit there was any cloud on the title by reason of unpaid claims against the estate of Frank D. Coryell. That question seems now immaterial, for although the estate may not have been formally settled in the probate court, the testimony in the instant case was that all of these claims had been paid.

So far as the record shows, the mortgagee, White, was not insist-

ing on any immediate payment of her note. Prior to Hardy's default the association's mortgage was not in default. When Mrs. Coryell filed her action all parties were brought in. Had the action been solely between Mrs. Coryell and Hardy the judgment of the trial court would have been entirely in accord with equity. We are of the opinion, however, that since judgments of foreclosure have been entered, the trial court's judgment did not fully cover the situation. Inquiry develops that no orders of sale have been issued, presumably awaiting decision of this appeal. We are not advised with respect thereto, but presumably since the rendition of judgment the bank, as trustee, has continued to collect the rents from the involved premises, and the amount on hand is now substantially larger than as shown by the evidence. An equitable disposition of the matter requires that consideration be given to the amount contracted to be paid for the real property, and the amount actually paid out of pocket by the purchaser as distinguished from the amount of rents applied; also to the fact that the purchaser did not, after the third year, pay taxes, insurance premiums and repairs in the manner provided by the contract, even though the seller may have consented thereto; also to the fact that the purchaser made default at a time when the association's mortgage was not in default—we pass by the White mortgage, for the note it secured was due when the contract was made—also to the fact that valid judgments in foreclosure are now existing and that the rights of the judgment creditors are superior to the rights of both seller and purchaser; also to the fact that even though the purchaser should now pay up the amount in arrears he might not or could not be adequately protected against sales under the foreclosure judgments. Consideration must also be given to the fact that the purchaser made no showing that warranted his default in the contract when it first occurred; that under the contract his rights are subject to forfeiture, and that under such circumstances he loses what he paid. Although the contract lacks definite provision that if default be made by the purchaser, the seller might declare the entire unpaid portion of the principal immediately due and payable, in event of sales under the foreclosure judgments, generally it must be so considered, otherwise the rights of the various parties cannot be determined. Giving effect to these considerations, it is necessary that we direct the trial court to alter, amend and supplement its order, and in order that this may be done, some further showing must be

made. The amount in arrears and due on the contract as of March 2, 1935, was determined. The amount in arrears and due on the contract as of the date of further hearing should be determined; as well, also, the entire balance remaining unpaid whether then due or not. Presumably the trustee bank has continued to collect the rents due from the involved real estate. At the former trial it was ordered that out of this fund the taxes should be paid, and the balance applied on the contract. Under the contract, however, these funds were applicable to reduction of the contract consideration. The amount on hand as of the date of future hearing should be determined, and as under their mortgage judgment liens the judgment creditors are not entitled to look to the impounded rents for satisfaction, and appellant Hardy has contracted to pay taxes, the impounded rents should be ordered paid to Mrs. Coryell to be applied on the amount due from the purchaser, Hardy. The sale of the real estate should be ordered, and out of the proceeds there should be paid: (1) Costs and accruing costs. (2) Any unpaid taxes. (3) The judgment in favor of the association and interest. (4) The judgment in favor of Minnie Marsh White and interest. (5) The balance of the total claim in favor of Mrs. Coryell. (6) Any residue to be paid into court to await its further order. The trial court should consider whether or not, prior to entering the order of sale, it should take evidence on and fix a minimum or upset price for said real estate. Provision should also be made that if Mrs. Coryell be the purchaser at sheriff's sale, within a reasonable time to be fixed by the court, the appellant Hardy, upon payment of all arrearages then due from him under the contract, may reinstate the contract. The judgment creditors, having no lien on impounded rents, and the purchaser, Hardy, having pledged the same under the contract, provision should be made for their collection during the interval between the date of judgment and date of sale and during the period of redemption, and for ultimate disposition thereof, the trial court retaining jurisdiction for that purpose. If the purchaser at the sheriff's sale be any other than Mrs. Coryell the period of redemption should be fixed at eighteen months from date of sale, and should be adjudged solely to Mrs. Coryell. If, in connection with the ultimate closing other or further orders are needed, the trial court shall make the same consistent with the views herein expressed. It is so ordered.