In re Bessie **KRUCKENBERG,**

Bessie **KRUCKENBERG,**
Debtor/Appellant,

v.

**FIRST NATIONAL BANK OF MEDICINE LODGE,**
Creditor/Appellee.

Civ. A. No. 92–4191–DES.
Bankruptcy No. 92–40667–12.

United States District Court,
D. Kansas.

Oct. 18, 1993.

Dan E. Turner, Phillip L. Turner, Turner Law Office, Topeka, KS, for Bessie Kruckenberg.

Robert R. Eisenhauer, Christensen, Johnston & Eisenhauer, Pratt, KS, for First Nat. Bank of Medicine Lodge, Kan., appellee.

Eric C. Rajala, Overland Park, KS, trustee.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on Bessie Kruckenberg's ("appellant") appeal from the bankruptcy court's journal entry filed on August 5, 1992. In the journal entry, the bankruptcy court admitted certain exhibits offered by First National Bank of Medicine Lodge ("appellee") and, as a result, denied appellant's motion to avoid liens. Appellant argues the bankruptcy court erred in admitting the contested exhibits. Appellant contends that, with respect to the contested exhibits, the alleged errors require this court to reverse the bankruptcy court's denial of appellant's motion to avoid liens.

For the reasons set forth in this order, the court affirms the bankruptcy court on each of its challenged decisions.

### *Jurisdiction*

■ A threshold question is the court's jurisdiction to hear this appeal. Section 158(a) of Title 28 governs appeals to district courts from judgments, orders, and decrees of bankruptcy judges. In pertinent part, 28 U.S.C. § 158(a) provides as follows:

(a) The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

Accordingly, in specified bankruptcy cases, the court has the power to hear appeals from either final or interlocutory orders. If the appeal is from a final order, the court's jurisdiction is mandatory. If the appeal is from an interlocutory order, the court's jurisdiction is not mandatory and can be invoked only upon leave of the court.

■ "Generally, an order is final if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Durability*, 893 F.2d 264, 265 (10th Cir.1990). In bankruptcy litigation, the majority of the circuits apply a flexible approach when examining an order's finality.[1] However, the Tenth Circuit does not apply the flexible approach to finality favored by the majority of other circuits. *In re Magic Circle Energy Corp.*, 889 F.2d 950, 953 (10th Cir.1989). Instead, the Tenth Circuit has chosen to stay with a more traditional approach. *Id.* The only apparent concession which the Tenth Circuit makes is that "the appropriate 'judicial unit' for application of [the] finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding or discrete controversy pursued within the broader framework cast by the petition." *In re Durability*, 893 F.2d at 266.

■ Measured by the traditional finality rule, the bankruptcy court's order denying appellant's motion to avoid liens is not final because it does not necessarily resolve all the matters between appellant and appellee nor does it terminate the adversary proceeding on the merits. Although the liens' validity constitutes a discrete dispute within the larger bankruptcy case, the bankruptcy court's order does not conclusively determine all issues involving these specific liens. Therefore, appellant appeals from an interlocutory order.

■ In order to appeal from an interlocutory order, appellant must first obtain leave from the court. Even though appellant did not file a motion for leave to appeal, the court treats its timely filed notice of appeal as a motion for leave. Bankr.Rule 8003(c). *See also In re Allegheny International, Inc.*,

1. *See, e.g., In re Sun Valley Foods Co.*, 801 F.2d 186, 189 (6th Cir.1986); *In re Martin Bros. Toolmakers, Inc.*, 796 F.2d 1435, 1437–1438 (11th Cir.1986); *In re Sax*, 796 F.2d 994, 996–997 (7th Cir.1986); *In re Barrier*, 776 F.2d 1298, 1299 (5th Cir.1985); *In re Teleport*, 759 F.2d 1376, 1377 (9th Cir.1985); *In re Amatex Corp.*, 755 F.2d 1034, 1039–1041 (3d Cir.1985); *In re Leimer*, 724 F.2d 744, 745 (8th Cir.1984); *In re Saco Local Development Corp.*, 711 F.2d 441, 443–446 (1st Cir.1983).

107 B.R. 518, 522 (W.D.Pa.1989) (stating that "[a]lthough no motion for appeal via leave of court has been filed, this Court may grant leave to appeal at its discretion").

■ Whether to hear an interlocutory appeal is within the court's discretion. *Matter of Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1378 (9th Cir.1985); *In re American Freight System*, 153 B.R. 316, 318 (D.Kan.1993). In determining whether to review an appeal from an interlocutory order, some courts have relied by analogy on 28 U.S.C. § 1292(b). Under § 1292(b), an appeal may be taken from an interlocutory order where the order involves (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation.

■ The issues on appeal all concern the validity of certain challenged liens. The question of the liens' validity is a controlling question of law as to which there is a substantial ground for difference of opinion. Furthermore, the court's resolution of this question should materially advance the ultimate efficient termination of this litigation. Indeed, the court's resolution of this question at this time should promote the efficient and prudent use of both judicial resources and the bankrupt estate during the process involved in negotiating and confirming the Chapter 12 plan. Therefore, the court grants leave in this case and accepts jurisdiction to hear this appeal.

### Facts

At the July 15, 1992, hearing, the bankruptcy court admitted three mortgages over appellant's objections: appellee's exhibits 19, 21, and 22. Exhibit 19 is a mortgage in the amount of $100,000. It secured a promissory note originally in the amount of $200,000, but later modified to $160,036.99. Exhibit 21 is a mortgage in the amount of $105,000. It secured a promissory note in the amount of $105,000. Exhibit 22 is a mortgage in the amount of $335,000. It secured promissory notes in the aggregate amount of $335,000.

Pursuant to K.S.A. § 79–3102(a), appellee paid a registration fee when it filed the mortgages with the register of deeds. Appellee paid the following amounts: (1) $250 when it filed exhibit 19; (2) $262.50 when it filed exhibit 21; and (3) $837.50 when it filed exhibit 22.

All the mortgages were executed by appellant and the Isabel State Bank. On February 28, 1991, the Isabel State Bank and the First National Bank of Medicine Lodge entered into an agreement to merge. By the terms of the agreement, the First National Bank of Medicine Lodge acquired all assets, rights, franchises and interests of the Isabel State Bank.

Prior to the merger, the Isabel State Bank took multiple consensual security interests in property owned by appellant. Before the financing statements perfecting these security interests expired, but after the Isabel State Bank's merger with appellee, appellee filed several continuation statements to preserve the security interests. Appellee filed exhibits 30 and 31 in order to continue two such financing statements. Since the Isabel State Bank ceased to exist following the merger, it did not sign either exhibit 30 or exhibit 31. However, on both exhibit 30 and 31, in the blank designated "Secured Party(ies)," appellee entered the following: "the First National Bank of Medicine Lodge, formerly the Isabel State Bank."

### Scope of Appellate Review

■ A district court reviews *de novo* a bankruptcy court's legal determinations. *In re Herd*, 840 F.2d 757, 759 (10th Cir.1988); *In re Branding Iron Motel, Inc.*, 798 F.2d 396, 399–400 (10th Cir.1986). The district court will not disturb a bankruptcy court's factual findings unless they are clearly erroneous. *Id.*

### Discussion

On July 15, 1992, the bankruptcy court held an evidentiary hearing on appellee's motion to avoid liens. This appeal arises from appellant's objections to the bankruptcy court's evidentiary rulings. Specifically, appellant objects to the admission of the following exhibits: appellee's exhibits 19, 21, 22, 30, and 31. Additionally, appellant objects to

the admission of appellee's exhibit 32, over her vagueness objection, and the exclusion, on relevancy grounds, of a letter from appellee's counsel to appellee dated October 4, 1991.

Appellant asserts the following four arguments: (1) with respect to the mortgages referred to as appellee's exhibits 19, 21, and 22, appellee failed to comply with K.S.A. § 79–3102(a) thereby rendering the mortgages inadmissible pursuant to K.S.A. § 79–3107; (2) the Isabel State Bank signed neither exhibit 30 nor exhibit 31, as required by K.S.A. § 84–9–403(3), therefore both exhibits are ineffective as continuation statements; (3) the October 4, 1991 letter from appellee's counsel to appellee was relevant, and through the doctrine of laches, prevents appellee from claiming a valid security interest on the described crops; and (4) the October 29, 1992, financing statement was vague and therefore invalid.

*Exhibits 19, 21, & 22: K.S.A. §§ 79–3102 and 3107.*

At the July 15, 1992, hearing, the bankruptcy court admitted three mortgages over appellant's objections. The three mortgages are appellee's exhibits 19, 21, and 22. Appellant maintains that appellee did not pay the correct registration fee required by K.S.A. § 79–3102 and therefore, pursuant to K.S.A. § 79–3107, the mortgages were inadmissible.

Appellant argues appellee underpaid the registration fee required by K.S.A. § 79–3102(a).[2] Their dispute focuses on the fee required where the mortgage secures only a fraction of the total indebtedness. Appellant claims K.S.A. § 79–3102(a) required a person to pay 00.25 percent of the value of the total

indebtedness. Appellee argues K.S.A. § 79–3102(a) required a person to pay 00.25 percent of the value of the fraction of the total indebtedness secured by the mortgage.

■■■ Pursuant to K.S.A. § 79–3102(a), a party must pay a registration fee before the register of deeds will record a mortgage. In pertinent part, the version of K.S.A. § 79–3102(a) relevant to this appeal provided as follows:

> Before any mortgage of real property ... is received and filed for record, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated *a registration fee of $.25 for each $100* and major fraction thereof *of the principal debt* or obligation *which is secured by such mortgage.*

(Emphasis added). Accordingly, the amount of the registration fee is to be calculated by taking a percentage of the principal debt "which is secured by such mortgage."

Appellant contends that the initial question presented is whether the tax is to be calculated as a percentage of the entire indebtedness or as a percentage of the value of the mortgage. The court is unable to find a Kansas case specifically addressing this question. Appellant bases her interpretation of K.S.A. § 79–3102(a) on two Kansas sources: (1) dictum from *Union Pacific Railroad Co. v. Stratemeyer,* 119 Kan. 8, 237 P. 873 (1925), and (2) Kansas Attorney General's Opinion 90–61.

In *Union Pacific Railroad Co. v. Stratemeyer,* the Kansas Supreme Court interpreted the original version of K.S.A. § 79–3102.[3]

---

**2.** The Kansas Legislature amended K.S.A. § 79–3102(a) some time after the transactions at issue in this case. The current version of K.S.A. § 79–3102(a) is substantially the same as the excerpt reproduced above. However, the Legislature added the following sentence: "[i]n the event the mortgage states that an amount less than the entire principal debt or obligation will be secured thereby, the registration fee shall be paid on such lesser amount." K.S.A. § 79–3102(a) (1992 Supp.).

**3.** The relevant portions of K.S.A. § 79–3102 are virtually identical in the statute's original version and as it appeared during the periods relevant in this case.

In its original form, the pertinent part of the statute provided as follows:

> Before any mortgage of real property, or renewal or extension of the same shall be filed for record ... there shall be paid to the register of deeds of the county in which such property or any part thereof is situated a registration fee for each one hundred dollars and major fraction thereof, of the principal debt or obligation which is secured by such mortgage, the sum of 25 cents.

*Union Pacific,* 119 Kan. at 8, 237 P. 873.

In its form at the periods relevant to this case, K.S.A. § 79–3102(a) provided as follows:

> Before any mortgage of real property, or renewal or extension of such mortgage, is re-

Although the Court held that Union Pacific owed no registration fee, the Court did, in dictum, explain how the registration fee was to be calculated. The Court wrote that "the amount of the registration fee is determined entirely by the sum secured, and is not at all affected by the value of the property constituting the security." *Id.* at 9, 237 P. 873.

In Attorney General Opinion No. 90–61, the Kansas Attorney General's Office also explained the manner in which the registration fee was to be calculated. Expanding upon the Kansas Supreme Court's opinion in *Stratemeyer,* the Attorney General's Office concluded that "the amount of the mortgage registration fee will depend on the amount of principal debt or obligation secured by the mortgage, and the fact that the real estate involved does not fully secure the debt is of no consequence." Kansas Att'y Gen. Op. 90–61.

Accordingly, appellant contends that K.S.A. § 79–3102 required appellee to pay a registration fee equal to 00.25 percent of the debt secured and not merely 00.25 percent of the value of the property constituting the security. That is, appellant argues appellee owed 00.25 percent of the debt secured and not merely 00.25 percent of the value of the mortgage.

If the court assumes, without deciding, that appellant is correct, appellee underpaid the registration fee required on exhibit 19 because it paid 00.25 percent of the value of the mortgage and not 00.25 percent of the debt which the mortgage was to secure. However, under either parties' interpretation, appellee paid the correct amount when it filed exhibits 21 and 22.

K.S.A. § 79–3107 provides that the register of deeds is not to record a mortgage until the registration tax is paid. In pertinent part, K.S.A. § 79–3107 provides as follows:

Any mortgage of real property executed . . . on which the registration fee as herein provided has not been paid, shall not be filed for record by any register of deeds, and such mortgage shall not be received in evidence in any suit, action or proceeding, and no judgment, decree or order for the enforcement thereof shall be rendered, made or entered in or by any court in this state.

Appellant argues that since appellee underpaid the registration fee required by K.S.A. § 79–3102(a), K.S.A. § 79–3107 required the bankruptcy court to refuse to admit exhibit 19. Appellant does not dispute that appellee paid at least a portion of the fee required by K.S.A. § 79–3102(a). Nor does appellant dispute that, upon payment of the fee, the register of deeds filed exhibit 19 for record.

■ Appellant asks the court to reverse the bankruptcy court and hold that appellee is unsecured as to the debt which exhibit 19 was intended to secure. The court is unable to hold that appellee is unsecured as to this debt. Although appellee may have underpaid the registration fee required by K.S.A. § 79–3102(a),[4] appellee did submit a fee to the register of deeds, which the register of deeds accepted, and the register of deeds subsequently filed exhibit 19 for record.

The court believes that the crux of the issue is whether appellant may benefit from the register of deeds' error in charging an insufficient fee. The court is unable to find a Kansas case that addresses this specific point. However, there is dictum from a Kansas Supreme Court case to the effect that any error a register of deeds may have made in calculating the fee will not benefit appellee.

In *Coryell v. Hardy,* 144 Kan. 194, 58 P.2d 1151 (1936), the mortgagee did not pay the tax immediately after the mortgage was made. However, the mortgagee paid the tax before trial. The Court stated that the mortgagee's delay in paying the tax was not criti-

---

ceived and filed for record, there shall be paid to the register of deeds of the county in which such property or any part thereof is situated a registration of fee $.25 for each $100 and major fraction thereof of the principal debt or obligation which is secured by such mortgage.

4. The court declines to decide this issue. It is unnecessary for the court to decide the proper method for calculating the amount of the mortgage registration tax owed on exhibit 19. Appellant's question on appeal can be resolved without the court interpreting the taxation formula embodied in K.S.A. § 79–3102(a).

cal. In addition, with respect to the amount of tax paid by the mortgagee, the Court noted "that the amount of tax that was paid may not have been fully sufficient cannot avail appellant, that is the concern of the tax collecting authorities." *Coryell*, 58 P.2d at 1156.

The implicit rationale for the Court's conclusion in *Coryell* seems to be that the mortgage holder owes to the taxing authority the duty embodied in K.S.A. § 79–3102(a) and enforced in K.S.A. § 79–3107. Any error which the register may make in calculating the correct amount of the tax is a matter to be corrected by the taxing authority. The mortgagee who attempts to comply, but fails because of the register's error, should not be subjected to the same penalty as the mortgagee who does not attempt to comply at all.

Therefore, by extension to the instant case, that the amount of tax that appellee paid may not have been fully sufficient cannot avail appellant. The sufficiency of the tax submitted and accepted is a matter between the tax collecting authority and the taxpayer. Appellant is not to be a beneficiary of the tax collecting authority's possible mistake. Thus, the court affirms the bankruptcy court's decision to admit exhibit 19 over appellant's K.S.A. §§ 79–3102(a) and 3107 objections.

### Exhibits 30 & 31: K.S.A. § 89–9–403(3).

Appellant attacks the effectiveness of two continuation statements: exhibits 30 and 31. Specifically, appellant argues these two exhibits are defective because they were filed by the First National Bank of Medicine Lodge and not the Isabel State Bank. The Isabel State Bank signed and filed the underlying financing statements.[5] Appellant reads K.S.A. § 84–9–403(3) to require Isabel State Bank, as the original secured party, to have filed and signed the continuation statements.

More particularly, appellant reads § 84–9–403(3) as allowing nobody but Isabel State Bank to have filed and signed the continuation statements.

In pertinent part, K.S.A. § 84–9–403(3) provides that "[a]ny ... continuation statement must be signed by the secured party.... A continuation statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record and complying with subsection (2) of section 84–9–405."

The Isabel State Bank was the original secured party of record. The reason it did not file either exhibit 30 or exhibit 31 was because it ceased to exist prior to the date on which the two exhibits were filed. Under an agreement to merge, entered into on February 28, 1991, the Isabel State Bank merged with the First National Bank of Medicine Lodge. The First National Bank of Medicine Lodge filed exhibits 30 and 31 on September 23, 1991. Although the Isabel State Bank filed neither exhibit, each exhibit bears the following language in the box designated "Secured Party(ies):" "The First National Bank of Medicine Lodge, formerly Isabel State Bank."

At the hearing, the bankruptcy court admitted exhibits 30 and 31 because it found neither continuation statement was misleading and both satisfied the purpose of the statute.

K.S.A. § 84–9–403 does not contain a "harmless error" provision. The "harmless error" provision appears in K.S.A. § 84–9–402(8) and applies to financing statements. It provides that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."

---

**5.** In both the briefs and at the hearing, the parties appear to presume exhibit 31 corresponds to exhibit 25 and exhibit 30 corresponds to 27. However, the court is unable to find the correspondence between exhibits 30 and 27.

Exhibit 31 is a continuation statement purporting to continue the financing statement numbered 1121942. Financing statement 1121942 was admitted at the hearing as exhibit 25. Exhibit 30 is a continuation statement purporting to continue the financing statement numbered 1121941. Financing statement 1121941 was designated as proposed exhibit 26, but the court is unable to detect when this proposed exhibit was admitted.

Exhibit 27 is a financing statement numbered 1125274. It was continued by proposed exhibit 33. The court is unable to detect when this proposed exhibit was admitted.

Even though § 9–403 does not contain a "harmless error" provision, courts have applied § 9–402(8) to continuation statements. *See In re Adam,* 96 B.R. 249, 252 (Bankr. D.N.D.1989) (stating that "minor errors which are not seriously misleading will not invalidate a financing statement or a continuation statement"); *In re Vincent Gaines Implement Co., Inc.,* 71 B.R. 14, 16 (Bankr. E.D.Ark.1986) (applying the seriously misleading standard of §§ 9–402(8) to 9–403); *In re Edwards Equipment Co.,* 46 B.R. 689, 691–692 (Bankr.W.D.Okla.1985) (finding that a financing statement and its continuation statement are "inextricably intertwined" and applying §§ 9–402(8) to 9–403); *In re Barnes,* 15 U.C.C.Rep.Serv. (Callaghan) 956, 962–963, 1974 WL 21729 (D.Me.1974) (stating that there is "no good reason why minor continuation statement errors of a formal nature, not seriously misleading, should deprive a perfected security interest of continuing effectiveness").

 Pursuant to K.S.A. § 84–1–102(1), the Uniform Commercial Code is to be liberally construed so as to promote its underlying purposes and policies. K.S.A. § 84–1–102(1) (1983). Construing Article Nine to treat financing statements and continuation statements similarly is consistent with the command of K.S.A. § 84–1–102(1). Importing a "harmless error" provision, as the bankruptcy court apparently did at the hearing, recognizes that "the mutual purpose of financing and continuation statements is to give notice to creditors." *See In re Cohutta Mills, Inc.,* 108 B.R. 815, 821 (N.D.Ga.1989) (writing same and noting the cases that apply §§ 9–402(8) to 9–403 for this reason). As did the District Court in *In re Barnes,* this court believes § 1–102's commandment to construe the Uniform Commercial Code liberally, so as to promote its underlying notice-filing objectives, warrants the application of a "harmless error" standard to K.S.A. § 84–9–403(3). Indeed, "[t]here would seem to be no good reason why minor continuation statement errors of a formal nature, not seriously misleading, should deprive a perfected security interest of continuing effectiveness." *In re Barnes,* 15 U.C.C.Rep.Serv. at 962.

Although not appearing in K.S.A. § 84–9–403, the "harmless error" provision embodies a policy underlying all of Article Nine. As the Official UCC Comment to § 9–402 states, "[s]ubsection (8) is in line with the policy of this Article to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." By extension, it is hard to believe that the Legislature intended only K.S.A. 84–9–402 to be construed harmoniously with Article Nine's policy "to simplify formal requisites and filing requirements." Furthermore, to construe the statutory requirements for filing a continuation statement without applying the "harmless error" standard would be to emphasize form over substance in a manner inconsistent with the Article Nine's policy "to discourage the fanatical and impossibly refined reading of such statutory requirements."

The court agrees with the bankruptcy court that the two continuation statements at issue contained, at the most, mere "harmless error." Continuation statements are indexed according to the debtor's name. K.S.A. § 84–9–403(4). A creditor searching the files would not be misled by the manner in which the continuation statements were filed. Appellee clearly listed, as the secured party, "the First National Bank of Medicine Lodge, formerly the Isabel State Bank." It is difficult to accept that a creditor would be unable to make the connection. The continuation statements easily facilitate the notice-filing policy of Article Nine. Therefore, the court refuses to reverse the bankruptcy court's apparent application of K.S.A. § 84–9–402(8)'s "harmless error" provision.

### Relevance of the October 4, 1991, letter.

Appellant argues appellee is "estopped and barred by laches" from claiming proper perfection on growing crops. To support its argument, appellant points to the October 4, 1991, letter from appellee's attorney to appellee. In the letter, appellee's attorney stated his opinion that the financing statement dated September 24, 1984, is insufficient to secure future crops. The letter specifically references an error in the September 24,

1984 financing statement. It does not mention appellee's exhibit 25. Indeed, it suggests the error can be corrected by using language such as that appearing in appellee's exhibit 25.

Appellee does not rely on the September 24, 1984, financing statement to support a security interest in crops. Instead, appellee relies on appellee's exhibit 25, which was continued by appellee's exhibit 31. Accordingly, the bankruptcy court concluded that the October 4, 1991, letter was irrelevant. The financing statement referenced in the October 4, 1991 letter is not at issue in this case. Therefore, the court agrees with the bankruptcy court's conclusion that the letter is irrelevant.

■ Furthermore, even if the October 4, 1991, letter is relevant, appellant's reliance on the doctrine of laches is misplaced. Laches is an equitable doctrine designed to bar stale claims. *Steele v. Guardianship of Crist,* 840 P.2d 1107, 1117 (Kan.1992). In *Steele v. Guardianship of Crist,* the Kansas Supreme court explained that

> When a party neglects to assert a right or claim for an unreasonable and unexplained length of time, and the lapse of time and other circumstances cause prejudice to the adverse party, relief is denied on the grounds of laches. We have stated that the mere passage of time is not enough to allow a party to invoke the doctrine. For laches to apply, the court must consider the circumstances surrounding the delay

and whether there was any disadvantage to the other party caused by the delay. *Id.* Thus, parties invoke the doctrine of laches as an equitable analog to the statute of limitations.

■ Appellant seeks to invoke laches to negate the operation of a subsequently created consensual security interest. Appellant does not contend that appellee failed to assert a right or claim for an unreasonable length of time resulting in prejudice to appellant. Thus, appellant's argument is unavailing.

### *Exhibit 32: Sufficiency of the Collateral Description.*

■ Appellant asserts that the collateral description contained in exhibit 32 is vague and therefore renders exhibit 32 defective.[6] K.S.A. § 84–9–402 requires a financing statement to contain "a statement indicating the types, or describing the items, of collateral." The purpose of the financing statement's collateral description is to give public notice of the security interest. *Maxl Sales Co. v. Critiques, Inc.,* 796 F.2d 1293, 1298 (10th Cir. 1986); K.S.A. § 84–9–402, Kansas Comment at 471 (1983). Hence, consistent with this limited purpose, K.S.A. § 84–9–402 adopts a "notice filing" system. *See Id.*

K.S.A. § 84–9–110 governs the sufficiency of the collateral description required by K.S.A. § 84–9–402. In pertinent part, it states that "any description of personal property or real estate is sufficient whether or

---

6. In pertinent part, exhibit 32 provides as follows:

All growing, standing and stored wheat to be planted in October–November, 1991, and harvested in 1992 on the following described real property:

*Irrigated Wheat*

130 acres in the Northwest Quarter of Section 1, Township 30, Range 11, Barber County, Kansas.

100 acres in the Northeast Quarter of Section 1, Township 30, Range 11, Barber County, Kansas.

130 acres in the Northwest Quarter of Section 5, Township 30, Range 10, Kingman County, Kansas.

*Dryland Wheat*

150 acres in the Northeast Quarter of the Northeast Quarter of Section 31, Township 29, Range 10 and the Northeast Quarter of the

Southwest Quarter of the North Half of Southeast Quarter of South Half of Northeast Quarter of Section 5, Township 30, Range 10, Kingman County, Kansas.

23 acres in the Northwest Quarter of Section 1, Township 30, Range 11, Barber County, Kansas.

28 acres in the Southwest Quarter of Section 36, Township 29, Range 11, Pratt County, Kansas.

80 acres of the Northwest Quarter of Section 2, Township 30, Range 11, Barber County, Kansas.

33 acres in the West Half of the Northwest Quarter of Section 11, Township 30, Range 11, Barber County, Kansas (Gene and Harold Kruckenberg).

42 acres—corners of wheat in Barber County, Kansas.

not it is specific if it reasonably identifies what is described." K.S.A. § 84–9–110. The Kansas Comment to K.S.A. § 84–9–110 elaborates as follows:

"[t]he test of sufficiency is whether it makes possible the identification of the thing described for the benefit of third parties searching the files.... Even though the filing lacks details, if it gives clues sufficient that third persons by reasonable care and diligence may ascertain the property covered, the courts should uphold the description."

K.S.A. § 84–9–110, Kansas Comment at 409 (1983).

■■■ Exhibit 32 describes the collateral with sufficient specificity to satisfy K.S.A. § 84–9–110. The description provides third parties with enough information to enable them, through the exercise of reasonable care and diligence, to ascertain the property covered by the security interest. Therefore, the court rejects appellant's argument that exhibit 32 does not reasonably identify the collateral.

### Conclusion

**IT IS BY THE COURT THEREFORE ORDERED** that the bankruptcy court's decisions to admit appellee's exhibits 19, 21, 22, 30, 31, and 32 are affirmed.

**IT IS FURTHER ORDERED** that the bankruptcy court's decision to exclude the October 4, 1991, letter to appellee from appellee's attorney is affirmed.